HENRY, Circuit Judge.
This case arises from a contract dispute between a Colorado resident, the plaintiff Oren L. Benton, and a Canadian company, the defendant Cameco Corporation. Mr. Benton and Cameco entered into a Memorandum of Understanding in which Mr. Benton agreed to purchase uranium from Cameco for resale. The agreement also set forth the key terms of a planned joint venture to conduct uranium trading activities. When Cameco’s board did not approve the transactions contemplated by the Memorandum of Understanding, Mr. Benton sued Cameco in federal district court in Colorado, asserting claims for breach of contract and tortious interference with existing and prospective business relationships. The district court granted Cameco’s motion to dismiss on the grounds that Cameco did not have sufficient contacts with Colorado to allow the court to exercise personal jurisdiction over Cameco. Mr. Benton appealed. Because we agree with the district court that personal jurisdiction is inappropriate in this case, we AFFIRM.
I. BACKGROUND
Mr. Benton is a Colorado resident who has been engaged in the business of mining, milling, brokering, and trading uranium for many years. Cameco is a Saskatchewan company organized under the Canada Business Corporations Act with its principal offices in Saskatchewan.
Between 1988 and 1996, Mr. Benton’s NUEXCO Trading Company (“NTC”) and Cameco entered into a series of approximately two dozen transactions concerning the sale of uranium. These transactions typically consisted of Cameco selling uranium to NTC, buying uranium from NTC, or swapping its uranium for a like amount of NTC’s uranium. The transactions were “spot market” transactions, meaning that “each transaction involved separate, independent contractual negotiations, as opposed to a series of sales or trades pursuant to a single, longer term contract.” Aplt’s Br. at 5-6 n. 2. Such transactions were made in the ordinary course of business and did not require the approval of Cameco’s Board of Directors.
In November 1994, Mr. Benton and Ca-meco entered into the Memorandum of Understanding (“MOU”), the document at issue in this case. The MOU describes two separate transactions between Mr. Benton and Cameco. First, Cameco would provide Mr. Benton’s affiliates with quantities of uranium to satisfy Mr. Benton’s sales commitments to eighteen different utility companies around the world. Second, the MOU provided for the creation of a joint venture pursuant to which the parties, under Cameco’s control, would conduct future uranium trading activities.
The MOU conditioned the agreement to pursue these transactions upon several factors, including (a) a satisfactory due diligence review by Cameco of Mr. Benton’s eighteen purported uranium sales contracts and (b) the approval of Cameco’s Board of Directors. See Aplt’s App. at 133-134(MOU).
After the MOU was signed, members of Cameco’s staff spent two days in Colorado conducting the due diligence review of Mr. Benton’s eighteen supply contracts. In December 1994, Cameco’s Board of Directors met and declined to approve any of the transactions listed in the MOU.
In November 2000, Mr. Benton filed this case against Cameco in federal district court in Colorado, alleging breach of contract and tortious interference with existing and prospective business relationships. *1074 Cameco filed a motion to dismiss, arguing, inter alia, that the district court lacked personal jurisdiction over Cameco. The district court agreed, reasoning that Ca-meco had not established minimum contacts with Colorado because (1) Cameco’s contract negotiations with Mr. Benton, a Colorado resident, were insufficient to create minimum contacts with Colorado; (2) under 16 proposed sales contracts, delivery of uranium products would not take place in Colorado, as there are no uranium processing facilities there; (3) Cameco’s staffs brief visit to Colorado was insufficient to establish minimum contacts with Colorado; (4) the existence of a Colorado subsidiary of Cameco did not establish the necessary minimum contacts as the subsidiary was not an alter-ego of Cameco; and (5) it would be unfair to require a foreign corporation to defend this case in Colorado.
In addition, the district court stated that “[a]lthough it is technically unnecessary and possibly inappropriate for the Court to consider the merits of the claims where it has found that it lacks jurisdiction ... it [felt] compelled to do so.” Aplt’s App. at 191-92 (Dist. Ct. Order, filed Nov. 15, 2002). On the merits, the court concluded that Mr. Benton had failed to state either a breach of contract or a tort claim. On the contract claim, the district court found that because “Benton’s complaint concede^] that the MOU expressly conditioned] the existence of [the] potential transactions upon certain occurrences or performance” and because Mr. Benton affirmatively alleged that one of these conditions, the approval of the Cameco board of directors, did not occur, “there could be no contract to breach.” Id. at 192-93. As to the tort claim, the district court found that “Cameco’s directors were entitled if not mandated to exercise their discretion in their review of the proposed transactions,” and “the fact that the board of directors did not approve the agreement cannot constitute a lack of bona fide honesty or good faith simply because it was not consistent with the feeling of security” that Mr. Benton obtained from Cameco. Id. at 194.
Mr. Benton now appeals the rulings of the district court. We disagree with the district court’s conclusion that Cameco lacked minimum contacts with Colorado; however, we hold that “traditional notions of fair play and substantial justice,” Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), counsel against an exercise of personal jurisdiction over Cameco. Therefore, we conclude that the district court properly dismissed Mr. Benton’s claims because it lacked personal jurisdiction over Cameco.[1]
II. DISCUSSION
“We review de novo the district court’s dismissal for lack of personal jurisdiction.” Soma Med. Int’l v. Standard Chartered Bank, 196 F.3d 1292, 1295 (10th Cir.1999). “[W]hen the court’s jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists.” Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir.1995). “When, as in this ease, a district court grants a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.” Soma, 196 F.3d at 1295. “We resolve all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing.” Far West Capital, Inc. v. Towne, 46 F.3d 1071, *1075 1075 (10th Cir.1995). Mr. Benton contends he has made a prima facie showing of the court’s jurisdiction over Cameco.
“To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.” Soma, 196 F.3d at 1295 (internal quotation marks omitted). “Colorado’s long arm statute is coextensive with constitutional limitations imposed by the due process clause. Therefore, if jurisdiction is consistent with the due process clause, Colorado’s long arm statute authorizes jurisdiction over a nonresident defendant.” Day v. Snowmass Stables, Inc., 810 F.Supp. 289, 291 (D.Colo.1993) (citing Mr. Steak, Inc. v. District Court, 194 Colo. 519, 574 P.2d 95, 96 (1978)).
Our opinion in OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086 (10th Cir.1998), carefully and succinctly lays out the well-established constitutional analysis for personal jurisdiction:
“The Due Process Clause protects an individual’s liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful ‘contacts ties, or relations.’ ” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Therefore, a “court may exercise personal jurisdiction over a nonresident defendant only so long as there exist ‘minimum contacts’ between the defendant and the ' forum state.” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The requirement that “minimum contacts” be present protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar. See id. at 292, 100 S.Ct. 559....
The “minimum contacts” standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant “if the defendant has ‘purposefully directed’ his activities at residents of the forum, and the litigation results from alleged injuries that ‘arise out of or relate to’ those activities.” Burger King, 471 U.S. at 472, 105 S.Ct. 2174 (internal quotations omitted). Where a court’s exercise of jurisdiction does not directly arise from a defendant’s forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant’s general business contacts with the forum state. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
Id. at 1090-91.
Mr. Benton asserts that Cameco is subject to both specific and general jurisdiction. We examine each below.
A. Specific Jurisdiction
 A specific jurisdiction analysis involves a two-step inquiry. First we must consider whether “the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.” WorldWide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559. “Second if the defendant’s actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends ‘traditional notions of fair play and substantial justice.’ ” OMI, 149 *1076 F.3d at 1091 (quoting Asahi, 480 U.S. at 113, 107 S.Ct. 1026).
1. Minimum Contacts
In determining whether a defendant has established minimum contacts with the forum state, we examine whether the defendant “purposefully availed] itself of the privilege of conducting activities within the forum State.” Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A defendant’s contacts are sufficient if “the defendant purposefully directed its activities at residents of the forum, and ... the plaintiffs claim arises out of or results from ‘actions by the defendant himself that create a substantial connection with the forum state.’ ” OMI, 149 F.3d at 1091 (quoting Asahi, 480 U.S. at 109, 107 S.Ct. 1026) (internal citations omitted).
Mr. Benton asserts that Cameco purposefully directed it activities at Colorado because:
[ 1 ] Cameco entered into [the MOU] with a Colorado resident that set forth the key terms of a joint venture;
[ 2 ] Cameco would have partially performed the transactions contemplated by the MOU in Colorado in that it would have made payments to Benton in Colorado;
[ 3 ] Cameco sent employees to Colorado to conduct a due diligence review of Benton’s business in connection with the MOU;
[ 4 ] Cameco sent significant correspondence to Benton in Colorado; and
[ 5 ] Cameco committed a tortious act by interfering with Benton’s business relationships, the effects of which were suffered in Colorado.
Aplt’s Br. at 13. Mr. Benton also asserts that the MOU created a current and binding relationship for the purchase and sale of uranium to satisfy Mr. Benton’s eighteen utilities contracts, creating an additional contact between Cameco and Colorado resident Mr. Benton. Aplt’s Reply Br. at 2.
Cameco, on the other hand, contends that it has not established minimum contacts with the state of Colorado. It points out that it “has no bank accounts in Colorado, has no office or property in Colorado, is not licensed to do business in Colorado, has no employees in Colorado, does not advertise or solicit business in Colorado[,] and does not pay taxes in Colorado.” Aple’s Br. at 4. Furthermore, Cameco argues that personal jurisdiction is improper because (1) the proposed transactions of uranium with Mr. Benton would not take place in Colorado, as none of the eighteen utilities Mr. Benton had contracted to supply are in Colorado and there are no uranium processing facilities in Colorado; (2) it was Mr. Benton, not Cameco, who solicited the transactions; (3) neither the communications between the two companies, nor the execution of the MOU, nor the brief due diligence review were sufficient to establish minimum contacts; (4) Cameco never made any payments to Mr. Benton in Colorado; (5) Mr. Benton’s residence in Colorado is a mere coincidence that had no role in the parties’ dealings; and (6) the economic impact of Cameco’s alleged breach of contract and tortious activity on Mr. Benton’s Colorado business is not sufficient to establish jurisdiction.
We note at the outset that this is a very close case. We emphasize that the question of “[w]hether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case.” Kuenzle v. HTM Sport-Und, Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir.1996) (internal quotation marks omitted). The facts of this *1077 case place it in the grey area of personal jurisdiction analysis. However, we hold that there are enough contacts between Cameco and Colorado to establish what may be accurately termed “minimum” contacts.
A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum. Burger King, 471 U.S. at 473, 105 S.Ct. 2174. However, “with respect to interstate contractual obligations ... parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.” Burger King, 471 U.S. at 473, 105 S.Ct. 2174 (internal quotation marks omitted). In a contract case, relevant factors for assessing minimum contacts include “prior negotiations and contemplated future consequences, along with the terms of the contract and the parties’ actual course of dealing.” Id. at 479, 105 S.Ct. 2174.
In this case, the parties entered into a “Memorandum of Understanding” that proposed the terms of several uranium transactions and a joint venture to pursue uranium trading activities. The “prior negotiations” and the “contemplated future consequences” of the MOU centered around the continuing business relationship between Cameco and Mr. Benton. Although the uranium transactions themselves would occur in places other than the state of Colorado, the business end of the transactions — the brokering of the deals, the coordination of the parties, the exchange of money and information between the parties, and the decision — making behind the joint venture — would take place partially in Canada, where Cameco has its principal place of business, and partially in Colorado, where Mr. Benton has his principal place of business. Indeed, the instant dispute does not concern the uranium transactions, but the conduct of the parties in redefining their business relationship. By engaging in a business relationship with Mr. Benton, who operates his business from Colorado, Cameco “ ‘purposefully availfed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.’ ” Burger King, 471 U.S. at 475, 105 S.Ct. 2174 (quoting Hanson, 357 U.S. at 253, 78 S.Ct. 1228).
Although “phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts,” Far West, 46 F.3d at 1077, the correspondence exchanged between Cameco and Mr. Benton during the negotiation of the MOU provides additional evidence that Cameco pursued a business relationship with a Colorado business. Even more significant to our minimum contacts analysis, Cameco sent several of its employees to Mr. Benton’s office in Colorado to conduct the due diligence review required by the MOU. Came-co not only established a business relationship with Mr. Benton’s Colorado-based company on paper, but it also sent representatives to Colorado, the forum state, in order to maintain and further that business relationship. Although the due diligence review would have not been enough, in isolation, to establish minimum contacts, it represents an additional instance in which Cameco purposefully and knowingly availed itself of a business opportunity in Colorado.
Cameco argues that Mr. Benton’s presence in Colorado is a mere coincidence that is inadequate to confer specific jurisdiction over Cameco. However, we do not agree that “[t]he quality and nature” of Cameco’s contact with Colorado was “so ... random, fortuitous, [and] attenuated that it cannot fairly be said that [Cameco] *1078 should reasonably anticipate being haled into court” in Colorado. Burger King, 471 U.S. at 486, 105 S.Ct. 2174 (citations and quotation marks omitted). This is not a case in which the defendant’s only contacts with the forum resulted from “the mere unilateral activity” of the plaintiff. See World-Wide Volkswagen, 444 U.S. at 298, 100 S.Ct. 559 (holding that personal jurisdiction over defendant car manufacturer was inappropriate when defendant’s only contacts with the forum resulted from plaintiffs unilateral activity of driving defendant’s product into another state); Hanson, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (holding that personal jurisdiction over defendant trustee was inappropriate when defendant’s only contacts with the forum resulted from plaintiff-settlor’s unilateral activity of moving to Florida). Rather, Cameco voluntarily conducted business with Mr. Benton, whom Cameco knew to be located in Colorado for many years prior to and at the time of the events at issue. Again, Came-co’s sending employees to conduct the due diligence review at Mr. Benton’s place of business demonstrates Cameeo’s willingness to engage in bilateral business activity taking place in Colorado.
The touchstone of a minimum contacts analysis is whether “the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.” Worldr-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559. Cameco has transacted business with Mr. Benton since at least 1988, and at all times Mr. Benton has been located in Colorado. When Cameco negotiated and entered into the MOU in 1994, it voluntarily and knowingly entered into a relationship with a Colorado resident. Thus, Cameco “purposefully directed his activities at residents of the forum, and the litigation resulted] from alleged injuries that arise out of or relate to those activities.” Burger King, 471 U.S. at 472, 105 S.Ct. 2174 (internal quotation marks omitted). Over the course of Cameco’s negotiations with Mr. Benton, Cameco established several minor contacts with the state of Colorado. Although none of these contacts individually could support a finding of minimum contacts, we find that in the aggregate, Cameco’s “conduct and connection with the forum State [were] such that he should reasonably anticipate being haled into court there.” World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559. Thus, we hold that Cameco had sufficient minimum contacts to support an exercise of personal jurisdiction.
2. Traditional Notions of Fair Play and Substantial Justice
Although we have found that there are sufficient minimum contacts between Cameco and Colorado, we are also required to “consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.” OMI, 149 F.3d at 1091. Therefore, we inquire “whether a district court’s exercise of personal jurisdiction over a defendant with minimum contacts is ‘reasonable’ in light of the circumstances surrounding the case.” Id.
In assessing whether an exercise of jurisdiction is reasonable, we consider [a] the burden on the defendant, [b] the forum state’s interest in resolving the dispute, [c] the plaintiffs interest in receiving convenient and effective relief, [d] the interstate judicial system’s interest in obtaining the most efficient resolution of controversies, and [e] the shared interest of the several states in furthering fundamental social policies.
Id. at 1095. The analyses of minimum contacts and reasonableness are complementary, such that
*1079 “[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiffs showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].”
Id. at 1092 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir.1994)). Applying this framework, we conclude that an exercise of personal jurisdiction over Cameco in the District of Colorado would be inconsistent with traditional notions of fair play and substantial justice.
(a)Burden on Defendant of Litigating in the Forum
“[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction.... When the defendant is from another country, this concern is heightened and ‘great care and reserve should be exercised’ before personal jurisdiction is exercised over the defendant.” Id. at 1096 (quoting Asahi, 480 U.S. at 114, 107 S.Ct. 1026).
In this case, the burden on the defendant is significant. Cameco is a Canadian corporation with principal offices in Saskatchewan, and it has no office or property in Colorado, is not licensed to do business in Colorado, and has no employees in Colorado. See id. (finding burden on defendants significant when Canadian corporation had no license to conduct business in Kansas, maintained no offices in Kansas, and employed no agents in Kansas). Ca-meco’s officers and employees “will not only have to travel outside their home country, they will also be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute.” Id. Therefore, this factor weighs against an exercise of personal jurisdiction over Cameco.
(b) Forum State’s Interest in Adjudicating the Dispute
“States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.” Id. “The state’s interest is also implicated where resolution of the dispute requires a general application of the forum state’s laws.” Id. In this case, this factor favors both Mr. Benton and Cameco. Mr. Benton is a Colorado resident, and the state has an interest in providing him a forum for his suit against Cameco. However, the parties agree that Canadian law will govern the dispute. Therefore, this factor does not weigh heavily in favor of either party.
(c) Plaintiffs Interest in Convenient and Effective Relief
This factor
hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a plaintiffs chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum’s laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.
Id. at 1097. Because Canadian law governs the suit and because Mr. Benton has not established that litigating the matter in Canada would cause undue hardship to him, we find that Mr. Benton would be able to receive convenient and effective relief by bringing suit in Canada. Therefore, this factor weighs in Cameco’s favor, against an exercise of jurisdiction.
*1080 (d) Interstate Judicial System’s Interest in Obtaining Efficient Resolution
This factor asks “whether the forum state is the most efficient place to litigate the dispute.” Id. “Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum’s substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.” Id. (citations omitted). Based on the nature of Mr. Benton’s claims against Cameco, many of the witnesses in the dispute would be directors, officers, and employees of Came-co, all of whom are located in Canada. Likewise, the alleged wrong, Cameco’s failure to approve the transactions in the MOU, occurred in Canada, and Canadian law will govern the dispute. Moreover, Mr. Benton need not litigate the action in Colorado to avoid piecemeal litigation. Id. Therefore, we find that litigating the dispute in Colorado would not be more efficient than in Canada.
(e) States’ Interest in Furthering Fundamental Substantive Social Policies
The fifth factor of the reasonableness inquiry “focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations.” Id. “The Supreme Court has cautioned that ‘great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.’ ” Id. at 1097-98 (quoting Asahi, 480 U.S. at 115, 107 S.Ct. 1026). Therefore, we must look closely at the extent to which an exercise of personal jurisdiction by Colorado over Cameco interferes with Canada’s sovereignty. Id. Relevant facts include “whether one of the parties is a citizen of the foreign nation, whether the foreign nation’s law governs the dispute, and whether the foreign nation’s citizen chose to conduct business with a forum resident.” Id. at 1098 (citations omitted). Cameco did chose to conduct business with Mr. Benton, a resident of Colorado. However, Cameco is a Canadian corporation, Canadian law will govern the dispute, and we are required to give deference to the international nature of this case. Therefore, we find that an exercise of personal jurisdiction would affect Canada’s policy interests.
We have already concluded that Came-co’s contacts with Colorado were quite limited, barely satisfying the minimum contacts standard. As a result, Cameco need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry. OMI, 149 F.3d at 1092. Because the majority of the five reasonableness factors weigh in Cameco’s favor, we hold that an exercise of personal jurisdiction over Cameco would offend traditional notions of fair play and substantial justice.
B. General Jurisdiction
Although we have found that the Colorado district court lacks specific jurisdiction over Cameco, we must further inquire whether general jurisdiction exists. “Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant’s continuous and systematic general business contacts.” OMI, 149 F.3d at 1091 (internal quotation marks omitted).
Mr. Benton asserts that Cameco has such contacts with Colorado because (1) in addition to the dealings at issue in this case, Cameco and Mr. Benton engaged in two dozen “spot market” transactions between 1988 and 1996, and (2) Cameco has a wholly-owned U.S. subsidiary, *1081 Cameco, Inc., that is licensed to do business in Colorado. We disagree. First, the occurrence of two dozen transactions taking place over a period of eight years, with the last taking place at least four years before suit was filed in November 2000, is not sufficient to meet the high burden of demonstrating that Cameco had “continuous and systematic general business contacts.” Second, as the district court observed, Mr. Benton has not alleged nor produced evidence to show that Cameco, Inc., is the general agent or alter ego of Cameco. His allegation that “there is an overlap of current and former officers and directors of Cameco and Cameco, Inc.,” Aplt’s Br. at 21 — an overlap that actually , consists of one common officer — is insufficient proof. “[A] .holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.” Quarles v. Fuqua Indus., Inc., 504 F.2d 1358, 1362 (10th Cir.1974). Therefore, the activities of Cameco, Inc., in Colorado cannot be imputed to Cameco for the purpose of assessing Cameeo’s general business contacts with Colorado. Because Cameco has not established “continuous and systematic general business contacts” with Colorado, an exercise of personal jurisdiction over Cameco is improper.
C. Failure to State a Claim
Because we have concluded that the court lacks personal jurisdiction over Ca-meco, we need not address the district court’s determination that Mr. Benton failed to state a claim.
III. CONCLUSION
Although we hold that there are minimum contacts in-this case, those contacts are so weak that our evaluation of “whether a district court’s exercise of personal jurisdiction over a defendant with minimum contacts is ‘reasonable’ in light of the circumstances surrounding the case,” OMI, 149 F.3d at 1091, takes on more importance. Because a majority of the reasonableness factors weigh against an exercise of personal jurisdiction, we find that an exercise of specific personal jurisdiction by the Colorado district court would be inappropriate under the facts of this case. Additionally, the requirements of general jurisdiction are not met. Therefore, we AFFIRM the district court’s dismissal for lack of personal jurisdiction.

. Because we dismiss the case for lack of personal jurisdiction, we do not address the district court's dismissal for failure to state a claim.