**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MELEA, LIMITED; THE ADMIRALTY
TRUST; BARNACLE TRUST; RUM
ROW TRUST; PORT ROYAL TRUST;
PORT ROYAL CHARITABLE TRUST,
Successor to the Michael Ladney
Charitable Trust and the Michael Ladney
Charitable Remainder Trust; RUSSBURY
INTERNATIONAL LIMITED;
SEWARD INTERNATIONAL
CORPORATION BVI; BUCCANEER
INVESTMENTS LIMITED,

     Plaintiffs-Appellants,

v.

JAWER SA,

     Defendant-Appellee,

BARRY S. ENGEL; ENGEL &
REIMAN, P.C., FKA Engel, Reiman &
Lockwood, P.C.,

     Defendants.

No. 07-1127

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:05-cv-658-PSF)**

---

Brice A. Tondre, Lakewood, Colorado, for Plaintiffs-Appellants.

Christopher J. King, Homer Bonner, P.A., Miami, Florida, for Defendant-Appellee.

Before **BRISCOE, EBEL,** and **MURPHY**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Plaintiff-Appellant Melea, Ltd., a Gibraltar corporation, retained Defendant-Appellee Jawer, S.A. ("Jawer"), a Swiss corporation, to administer Melea's day-to-day finances. Melea and its related entities (collectively, "Melea") filed this diversity action in federal district court in Colorado pursuant to 28 U.S.C. § 1332, alleging that Jawer breached its fiduciary duties by permitting a Colorado lawyer to overcharge for legal services and misappropriate funds from Melea. Jawer moved for dismissal, arguing that the court lacked personal jurisdiction. The district court granted the motion based on its conclusion that Jawer did not have the necessary minimum contacts with Colorado. Melea now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm. We deny Jawer's motion for fees and costs sought pursuant to Rule 38 of the Federal Rules of Appellate Procedure, but remand Jawer's motion for "just damages, including attorney's fees and costs" under Swiss law to the district court for further proceedings consistent with this opinion.

I.

The facts of this case and the relationships between the various parties are far from clear. This lack of clarity is largely by design. In the early 1990s, Michael Ladney, a wealthy Florida businessman, developed an asset protection plan whereby he sought to

place assets gained by virtue of his ownership of certain patents outside the reach of U.S. creditors. As a part of the plan, Ladney transferred his patents and other assets exceeding $10,000,000 to various trusts and corporations. With the exception of one of the trusts, which was based in Florida, none of these entities were located in the United States.

Jawer is a Swiss corporation with its principal place of business in Geneva, Switzerland. It describes its business as performing fiduciary and administrative services for clients. As a part of Jawer's services, it provides clients with ready-made shell corporations, through which its clients can conduct their businesses. In 1992, one of Ladney's attorneys contacted Jawer in order to obtain a corporation to transact patent-related business, including enforcing and licensing Ladney's patents. In response, Jawer provided Melea, a corporation in its inventory that had been formed under the laws of Gibraltar. Melea then received various assets, including the patents, from the trusts and corporations formed for Ladney's benefit. These trusts and corporations eventually became the owners of all shares and interests in Melea.

Shortly thereafter, in early 1993, Jawer's directors traveled to Florida to finalize Jawer's business arrangement with Ladney and his attorneys. At this meeting, Melea—at the time apparently controlled by Ladney through his attorneys—retained Jawer to administer Melea's day-to-day finances. As a part of the arrangement, Jawer's officers and directors also served as Melea's officers and directors. Melea and Jawer subsequently entered into a Fiduciary Mandate, under which Jawer had the power and obligation to open bank accounts for Melea, to appoint Melea's managing directors and

other representatives, to ensure these representatives acted for Melea's benefit, and to carry out written instructions from Melea. Ferdinand Werder, now a director of both Jawer and Melea, signed the Mandate on Melea's behalf, while Maria de Fusco, also now a director of both companies, signed on Jawer's behalf. The Mandate incorporated various conditions to the relationship between Jawer and Melea. Among other conditions, the Mandate authorized Jawer to transfer part or all of its responsibilities to a third party of its choosing, and also authorized Jawer to make payments from and deposits into Melea's bank accounts.

The purpose of this complex arrangement was apparently to provide the illusion that Melea's affairs were being conducted from abroad, while they were in fact being run from the United States. Jawer made no meaningful business decisions of its own with respect to Melea. Pursuant to Ladney's instructions, Jawer instead conducted Melea's financial affairs in accordance with directions from attorneys for both Ladney and Melea in the United States.[1]

The relationship between Jawer and the attorneys functioned in the following manner. The attorneys would provide Jawer with invoices related to Melea's business, both from themselves and from other parties conducting business with Melea. These

---

[1] Melea characterizes the relationship between Jawer and the attorneys as Jawer "engaging the services of" the attorneys "to act on behalf of Jawer in carrying out its fiduciary responsibilities" to Melea, or as a "delegation" of those duties to the attorneys. Aplt.'s Br. at 3. However, its citations to the record do not support these assertions, which were also made in Melea's First Amended Complaint. Further, they are contradicted by evidence in the record, see, e.g. Appx. at 54-55, and are unsupported by any affidavits or other evidence from Melea.

invoices were sometimes accompanied by the attorneys' instructions to pay the invoices. Jawer would then summarily pay the invoices from Melea's Gibraltar-based bank accounts. From 1992 to 1996, Jawer received invoices and instructions from Melea's attorneys in Florida. In 1996, Melea retained Colorado attorney Barry Engel as its U.S. legal counsel, and from 1996 to 2002, Jawer received invoices and instructions from him.

Melea and Jawer agree that Jawer stopped communicating with the Florida attorneys and started communicating with Engel after Ladney himself told it to do so in May 1996. Ladney's degree of participation in the enterprise after Melea's formation is unclear. Viewed at arm's length, Ladney apparently remained a part of Melea's affairs through his involvement with two corporations that served as Melea's "sales representatives."[2] In some instances, Jawer received and followed instructions directly from Ladney's business agent. Ladney's attorneys, however, advised both him and Jawer that he should not be involved with the day-to-day operation of Melea and should avoid contact with Jawer, presumably to further the illusion that Melea was a foreign enterprise having nothing to do with Ladney. On at least one occasion, Engel directed Jawer to avoid direct contact with Ladney and instead to communicate with him through another of his attorneys. On another occasion, Engel requested that Jawer alter a billing statement to conceal its communications with Ladney. Jawer complied with these requests.

---

[2] Jawer asserts that "[i]t has already been adjudicated . . . that Michael Ladney and his agents controlled Melea's business." Aple.'s Br. at 20. It has not. In the prior case Jawer points to, Ladney's control was merely assumed for purposes of holding that Melea was subject to personal jurisdiction in Florida. See Appx. at 81-87.

It is Jawer's alleged conduct during the course of its relationship with Engel that gives rise to this litigation. Melea contends that Jawer breached its fiduciary duties to Melea by paying out unearned legal fees to Engel and Ladney's other attorneys from Melea's Gibraltar-based bank accounts. Melea alleges that Jawer did not exercise its independent judgment concerning the propriety of those fees, and simply paid any bills Engel forwarded, in essence permitting Engel to make payment decisions. Melea terminated its relationship with Engel in early 2002, and terminated its relationship with Jawer shortly thereafter.

On April 8, 2005, Melea filed suit against Jawer, Engel, his law firm, and several other defendants in the United States District Court for the District of Colorado.[3] Subject-matter jurisdiction was premised on diversity of citizenship. Jawer filed a motion to dismiss, alleging lack of personal jurisdiction. On September 18, 2006, the district court granted Jawer's motion and dismissed all claims against Jawer for lack of personal jurisdiction, because it did not believe that Jawer had the requisite "minimum contacts" with Colorado, and because it further believed that the exercise of jurisdiction over Jawer would offend "traditional notions of fair play and substantial justice." The court held no evidentiary hearing in this matter. Melea appeals from the final judgment entered on March 3, 2007.

---

[3] On Melea's motion, the district court later dismissed the other defendants, including Engel and his law firm, with whom Melea settled. Jawer is the only remaining defendant on appeal.

II.

We review a trial court's dismissal for lack of personal jurisdiction over the defendant *de novo*. TH Agric. & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007). The plaintiff has the burden of proving that the court has jurisdiction. Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir. 2004). Where, as here, the district court does not hold an evidentiary hearing before dismissing the case, the plaintiff must only make a prima facie showing of personal jurisdiction. Id. The plaintiff may meet this burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." TH Agric., 488 F.3d at 1286 (citation and quotation marks omitted). We accept as true any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor.[4] Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

A federal court sitting in diversity may only assert personal jurisdiction over a defendant if two criteria are met. "First, a federal district court may only exercise personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" United States v. Botefuhr, 309 F.3d 1263, 1271 (10th Cir. 2002) (quoting Fed. R. Civ. P. 4(k)(1)(A)). Second, an exercise of personal jurisdiction under state law must comport with the Fourteenth Amendment's due process clause. Id. In Colorado, only one inquiry

---

[4] We decline Jawer's invitation to review the district court's factual findings for clear error, as it is obviously inconsistent with the rule that factual disputes are resolved in the plaintiff's favor when personal jurisdiction is at issue.

7

is necessary, as the Colorado long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions,"[5] and its requirements are necessarily addressed under a due process analysis. Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1193 (Colo. 2005).

When evaluating personal jurisdiction under the due process clause, we conduct a two-step analysis. At the first step, we examine "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there." TH Agric., 488 F.3d at 1287 (citation and quotation marks omitted). If the defendant has sufficient contacts, we then proceed to the second step. Id. At this step, "we ask whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances. Id. (citation and some quotation marks omitted). The district court considered both steps of the analysis and concluded that neither supported the exercise of jurisdiction over Jawer. We need only consider the first of these steps, as we conclude that Jawer had insufficient contacts with Colorado to permit the exercise of jurisdiction over it in that state.

The "minimum contacts" test may be met in either of two ways. First, if a defendant has "continuous and systematic general business contacts" with the forum state,

[5] The due process analysis of personal jurisdiction under the Colorado Constitution is identical to that performed by federal courts under the United States Constitution, and thus necessitates only a single discussion here. See, e.g., Archangel Diamond, 123 P.3d at 1194-95 (applying the "minimum contacts" and "fair play and substantial justice" tests).

8

it may be subjected to the general jurisdiction of the forum state's courts. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 (1984). It is clear that Jawer's contacts with Colorado are not "continuous and systematic" enough to give rise to general jurisdiction over Jawer in Colorado. Jawer maintains no office or other place of business in Colorado, is not registered to do business in Colorado, does not solicit customers in Colorado, and has neither bank accounts nor property there. Its contacts with Colorado were almost exclusively limited to Jawer's communications with Engel on behalf of Melea, which itself did not conduct business in Colorado, short of employing an attorney there. Other than its communications with Engel, which ceased in 2002, Jawer's only contacts with Colorado came during brief trips on unrelated business.

Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985). Analyzing whether Colorado courts may exercise specific jurisdiction over Jawer requires a lengthier discussion.

*a.*

The district court believed that Jawer did not purposefully direct its activities toward Colorado because "all contact between Jawer and Colorado was at the direction of Mr. Ladney, who instructed Jawer to cease dealing with [one of the Florida attorneys] and instead to hand the responsibility over to Mr. Engel in Colorado." Appx. at 563. In other

9

words, the district court believed that the contacts were not "purposeful" because Jawer was contractually bound to follow Ladney's instructions. The court likened the facts of this case to Hanson v. Denckla, 357 U.S. 235, 252-53 (1958). In that case, the Supreme Court held that where a Delaware trust company and a Pennsylvania settlor executed a trust agreement in Delaware, the settlor's later move to Florida and the trust company's continued remittance of trust income to her in Florida were insufficient to create personal jurisdiction over the trust company in that state. Id. at 252-53. The Court wrote: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Id. at 253. Rather, only the defendant's own actions, directed at the forum State, are relevant to the jurisdictional question. Id. The district court in the instant case, echoing Hanson, stated that "any contacts between Jawer and Colorado were based on the unilateral acts of Melea and/or Mr. Ladney in instructing Jawer to deal with Mr. Engel, and not purposeful contacts on the part of Jawer." Appx. at 564.

In response to the district court's opinion, Melea argues that "only Jawer could make the decision to transfer the administration to Engel in Colorado" and that "[w]hile Ladney may [have requested] the transfer, he had no power to compel it." Aplt.'s Br. at 22. In essence, Melea contends that the district court did not resolve a factual dispute in Melea's favor as it should have. We agree—to an extent.

The district court's analysis is correct insofar as it relates to the payments Jawer made to Engel in Colorado. Jawer contracted with Melea to administer Melea's day-to-

10

day financial affairs. Its duties under this contract required it to make the payments to Engel, who was Melea's employee. Jawer had no choice in the matter. In accordance with Hanson, Jawer cannot be said to have purposefully directed such actions towards Colorado.

With regard to Jawer's remaining Colorado contacts, consisting primarily of its exchange of communications with Engel, we disagree with the district court that such contacts were not "purposeful." To begin, there is no evidence in the record that establishes that Melea itself instructed Jawer to deal with Engel in Colorado, so the district court's finding that Jawer's contacts with Engel were a result of Melea's actions or instructions is not supported. The evidence does indicate that Ladney instructed Jawer to begin dealing with Engel. However, it does not support the conclusion that Ladney had the authority to give binding instructions to Jawer.

While the terms of the Fiduciary Mandate indicate that Jawer was bound to carry out "any written instructions," Appx. at 114, the meaning of this provision is unclear. It does not specify when the instructions were to be given, e.g., whether there was a pre-existing set of instructions, or whether Jawer had to follow instructions given at any time during the relationship. It does not specify who could give the instructions. Neither the Mandate nor any other evidence suggests that Ladney had this authority. Even assuming he did, the evidence indicates that Ladney's instructions to change attorneys were not written, but were given verbally over the phone. See id. at 136 (fax describing phone call from Ladney). In addition, other provisions of the Mandate suggest that with regard to its

11

associations under the contract, Jawer was not bound to follow anyone's instructions. See, e.g., id. at 115, Art. 7 (providing that Jawer could transfer the execution of all or part of the Mandate to someone else without Melea's express permission). Based on this uncertainty, we cannot conclude that Ladney had the authority to compel Jawer's contacts with Engel.

The district court's opinion may have been influenced by a misreading of one of the conditions to the Fiduciary Mandate. In reciting the facts, the district court stated that Article 2 of the conditions required Jawer to "exclusively follow[] the instructions which will be transmitted to him by the Principal [Melea] or by any other person authorized by him." Appx. at 559. On appeal, Jawer also asserts that this language divests it of any control over the selection of Engel. The full sentence from which the district court was quoting, however, states that Jawer "*agrees to exercise all rights accruing to him as shareholder of the Company* exclusively following the instructions which will be transmitted to [it] by [Melea] . . . ." Id. at 115. The italicized language, omitted by the district court and Jawer's brief, refers back to Article 1 of the conditions, which permits Jawer to incorporate a company for Melea, and provides that Article 2 will apply to that company. Id. That language sheds no light on whether Jawer was obliged to follow Ladney's instructions. Even if it were applicable, there is no indication that Ladney is a "person authorized by" Melea to give Jawer instructions.

In short, the district court, by concluding that Jawer had no control over its communications with Engel in Colorado and was as powerless as the trust company in

12

Hanson, impermissibly resolved a factual dispute in Jawer's favor. The relevant Mandate

provisions are not clear on their face, and their meaning cannot be deduced from evidence

in the record.[6] Further factual development would be needed to conclude that Jawer's

contractual duties compelled its association with Engel. It is possible that Jawer was

contractually bound to follow instructions from Ladney. It is also possible, though, that

Jawer simply followed Ladney's instructions without having to, in which case its

association with Engel in Colorado was a conscious, purposeful decision on its part.

*b.*

That the contacts may have been purposeful only resolves part of our inquiry.

Melea's cause of action must also arise out of those contacts. Burger King, 471 U.S. at

472-73. Based on the uncontested allegations of Melea's complaint and the evidence

presented, this requirement is not met.

Jawer's purposeful contacts with Colorado consist of communications with Engel

between 1996 and 2002, including communications on 128 days in 1998 and on 114 days

in 1999.[7] Engel served as an intermediary between Jawer and the entities that conducted

---

[6] Melea objects to the enforcement of parts of the Mandate because it was signed by two people who were directors of both Jawer and Melea. This objection applies to the document as a whole. The possibility of a conflict of interest counsels against any great reliance on the Mandate at this stage of the litigation.

[7] Though not essential to our holding, we note that a defendant's correspondence with someone within the forum is typically insufficient to establish the requisite "minimum contacts." Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1077 (10th Cir. 1995) (citing Cont'l Am. Corp. v. Camera Controls Corp., 692 F.2d 1309, 1314 (10th Cir. 1982)). While the large volume of communications with Engel may be entitled to some

(continued...)

13

business with Melea. He transmitted invoices and other business information from those entities to Jawer, which paid the invoices without question. Further, when Engel suggested that Jawer cease communicating with Ladney and that it alter a billing statement to conceal contacts with Ladney, Jawer did so.

But it is not the receipt of those communications, or even the sending of communications in response, from which this suit arises. Rather, the two actions that gave rise to this suit were (1) Jawer's alleged breach of its fiduciary duties to Melea by its failure to review the propriety of the legal fees charged by Engel and Melea's other attorneys; and (2) its disbursement of funds to those attorneys. Neither of these actions occurred within Colorado. The alleged breach of fiduciary duties occurred in Switzerland, where Jawer received the invoices and would have reviewed the fees. Jawer's disbursement of funds from Melea's Gibraltar bank account necessarily occurred in Gibraltar, where the bank account was located. See Wenz, 55 F.3d at 1507 (holding that disbursement of funds from a bank account occurred where the account was located). In an effort to circumvent these apparent stumbling blocks, Melea attempts to characterize the communications between Jawer and Engel as evidence that Jawer delegated its duty to conduct Melea's day-to-day financial affairs to Engel in Colorado.

_____

[7](...continued)
consideration, the quality of those contacts must also be taken into account. Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1278 n.5 (10th Cir. 2005). Of particular note in this case is that the correspondence appears to have consisted primarily of communications (e.g., invoices) being sent from Engel in Colorado to Jawer in Switzerland, rather than vice versa.

14

Melea argues that in delegating responsibility to Engel, Jawer made him its agent and acted in Colorado through him. We cannot agree.

The argument that Engel was Jawer's agent is premised on the theory that Jawer transferred "the execution in part or total of the Contract of Mandate" to Engel in accordance with the conditions to the Fiduciary Mandate. Appx. at 115, Art. 7. This theory is untenable. The evidence indicates simply that Engel served as an intermediary through whom all of Melea's bills were transmitted to Jawer. At times, he also recommended the payment of certain invoices. Other than receiving Melea's invoices and sending them to Jawer, though, Engel took no actions for Jawer in Colorado. He did not perform any of the acts specified as Jawer's duties in the Fiduciary Mandate: he did not open or operate Melea's bank accounts, designate any representatives of Melea, or otherwise perform any administrative acts for Melea.

An agent is one who acts on another's behalf and is subject to the other's control. Restatement (Second) of Agency § 1(1); see also Dworkin, Chambers & Williams, P.C. v. Provo, 81 P.3d 1053, 1058 (Colo. 2003) ("[A]n agent is one with authority to act on behalf of and bind a principal.") (quotation and alterations omitted). There is no indication that Jawer had control over, or even the right to control, Engel's actions. Engel was not employed by Jawer; he was employed by Melea. See Appx. at 134-35.

Further, Melea has offered no evidence that Engel was acting on Jawer's behalf or that Engel's actions could legally bind Jawer in any way. Engel's communications with Jawer indicate that Engel expected Jawer to follow his instructions and recommendations

15

"subject . . . to the independent exercise of the judgment of the Board of Directors." Id. at 334. If Jawer failed to exercise that judgment, that act did not take place in Colorado. Jawer's contacts with Colorado basically consist of allowing Engel to receive Melea's invoices there and taking advice from him about whether to pay those invoices and other matters. Ultimately, though, Jawer itself received the invoices and authorized the payments in Switzerland. We therefore conclude that Engel was not Jawer's agent.

Melea also advances the argument that Engel's Colorado contacts can be attributed to Jawer as a co-conspirator. The existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction. Lolavar v. de Santibanes, 430 F.3d 221, 229 (4th Cir. 2005). In order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than "bare allegations" that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy. Id. at 229-30. Melea has failed to make such a showing.

Melea's conspiracy allegations are founded on Resolution Trust Corp. v. Heiserman, 898 P.2d 1049, 1055 (Colo. 1995), in which the Colorado Supreme Court held that joint and several liability for a tortious act may be imposed on multiple actors when the actors "consciously conspire and deliberately pursue a common plan or design [and] the execution of such common plan or design results in wrongful conduct causing injury or damages." Included within the definition of "wrongful conduct," according to

16

the Colorado Supreme Court, are negligent acts and breaches of fiduciary duty. Id. at 1055-56.

In support of its argument that Engel and Jawer deliberately pursued a "common plan or design," Melea points to evidence that Jawer simply deferred to Engel's judgment as to the propriety of any fees or expenses charged. Aplt.'s Br. at 9-15. None of the evidence presented, however, indicates that there was any "meeting of the minds" between Engel and Jawer that Engel would make payment decisions related to Melea. As already noted, Engel's communications with Jawer indicate that Engel expected Jawer to follow his instructions "subject . . . to the independent exercise of the judgment of the Board of Directors." Appx. at 334. The most that Engel and Jawer can be said to have agreed to is that Engel would receive Melea's invoices in Colorado and send them to Jawer. The "execution of [this] common plan" could not be said to have "result[ed] in wrongful conduct causing injury or damages," and Melea has thus not met the test of Heiserman, 898 P.2d at 1055.

In addition, to hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability. Assuming that Melea could make a prima facie showing of a conspiracy, Heiserman might warrant holding either Engel or Jawer liable for the other's acts under Colorado law. However, it does not necessarily establish that jurisdiction over Engel automatically translates into jurisdiction over Jawer. Due process requires that Jawer itself have minimum contacts with Colorado. See Rush

17

v. Savchuk, 444 U.S. 320, 332 (1980) (holding that party was not subject to state's jurisdiction in a personal injury action simply because his insurer was based there, and stating that the requirement of minimum contacts "must be met as to each defendant . . ."). While a co-conspirator's presence within the forum might reasonably create the "minimum contacts" with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum, these elements are lacking here. Where no injury related to the conspiracy occurred in Colorado, and Jawer's only Colorado-related action with regard to any purported conspiracy was to receive communications from Colorado, the basis for jurisdiction is slim.

Based on the foregoing, we conclude that Jawer's contacts with Colorado are insufficient to create personal jurisdiction over Jawer in that state. Although the district court erred in concluding that Jawer's contacts with Colorado were not "purposeful," those contacts, consisting primarily of communications with an attorney in that state, did not give rise to this suit. Instead, the key act giving rise to the suit is Jawer's failure to exercise reasonable care and judgment as to the propriety of the challenged legal fees. This action necessarily occurred in Switzerland, where Jawer received the invoices and communications from Ladney's attorneys and would have exercised any power of review. Because we resolve the issue on these grounds, we need not consider whether the exercise of jurisdiction over Jawer would offend "traditional notions of fair play and substantial

18

justice," or address the alternative grounds Jawer urges in support of the district court's ruling.

## III.

Jawer moves this court to award it just damages, including attorney's fees and costs related to this appeal. It asserts two theories under which it claims entitlement to this award. First, it argues that we should award it costs under Rule 38 of the Federal Rules of Appellate Procedure, which allows this court to award costs to an appellee if we determine that the appeal is frivolous. We do not believe such sanctions are warranted here. "An appeal is considered frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." F.D.I.C. v. McGlamery, 74 F.3d 218, 222 (10th Cir. 1996) (citation and internal quotation marks omitted). Though we affirm the district court's order, we do not believe that this result is so obvious as to render Melea's position frivolous. As discussed, the district court erred in its determination that Jawer's contacts with Colorado were not purposeful, and the theories of agency and conspiracy advanced by Melea, while perhaps unusual, are not so outrageous as to be frivolous.

Second, Jawer argues that the choice-of-law clause in the Fiduciary Mandate requires us to apply Swiss law to the dispute and award damages, including attorney's fees and costs related to this appeal, on that basis. In response, Melea argues that this court should not consider this issue because (1) it was not presented to and decided by the district court; and alternatively, (2) we are precluded from considering it under Rule 44.1 of the Federal Rules of Civil Procedure. We disagree with both of these contentions.

19

Melea's claim that Jawer's failure to raise this issue before the district court precludes us from considering it is nonsensical. Jawer's motion does not seek attorney's fees for the entire litigation, only for this appeal. The issue of attorney's fees for this appeal was not raised before the district court because there had not yet been any appeal for which Jawer had incurred attorney's fees.

Melea's argument that Rule 44.1 of the Federal Rules of Civil Procedure prohibits this court from considering this issue has two components. Melea first argues that Jawer did not provide notice of its intention to raise this issue of foreign law, as required by that rule. However, Jawer repeatedly argued before the district court that Swiss law governed the dispute, a fact taken into account in the district court's opinion. Melea also received fair notice of Jawer's intent to raise this specific issue from its motion. See Fed. R. Civ. P. 44.1 (stating that notice given "by a pleading or other writing" satisfies the rule). As the Advisory Committee Notes to Rule 44.1 indicate, the purpose of the notice requirement is "[t]o avoid unfair surprise," and the possibility of Swiss law applying to different aspects of this dispute has been evident from the outset. As a result, we cannot say that Melea was "unfairly surprised" by Jawer raising this issue.

Melea also argues that Rule 44.1 provides that evidence regarding foreign law "must be admissible under the federal rules of evidence," and that because the translation of Swiss law Jawer has filed is inadmissible, this court cannot rely on it. Aplt.'s Memo. in Opp. at 3. This is a misstatement of Rule 44.1. The Rule provides that in determining

20

foreign law, the court "may consider any relevant material or source . . . whether or not . . . admissible under the Federal Rules of Evidence."  This argument therefore fails as well.

Even though Melea's arguments as to the application of Swiss law fail, the possibility remains that Swiss law does not apply to this issue.  The validity of the choice-of-law clause in this case is suspect due to a potential conflict of interest, which may negate its enforceability.  See supra note 6 (noting this conflict).  There is no evidence in the record which would permit us to say conclusively that the clause is either valid or invalid.  We therefore remand this issue to the district court for further fact-finding to establish whether the choice-of-law clause is valid, and if so, whether it mandates the application of Swiss law to the issue of attorney's fees and costs.

## IV.

We AFFIRM the district court's ruling dismissing the suit for lack of personal jurisdiction, DENY Jawer's motion for fees and costs under Rule 38 of the Federal Rules of Appellate Procedure, and REMAND Jawer's motion for "just damages, including attorney's fees and costs" under Swiss law to the district court for it to determine whether the choice-of-law clause is valid, and if so, whether it mandates the application of Swiss law to the issue of attorney's fees and costs.