FILED
United States Court of Appeals
Tenth Circuit

March 5, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STEVE WELDON,

Plaintiff-Appellant,

v.

SHERYL RAMSTAD-HVASS,
Minnesota Department of Corrections
Commissioner; JOAN FABIAN,
Minnesota Department of Corrections
Commissioner; DENNIS BENSON,
Minnesota Department of Corrections
Assistant Commissioner; ERIK SKON,
Minnesota Department of Corrections
Assistant Commissioner; DAVID CRIST,
Minnesota Department of Corrections
Stillwater Correctional Facility Former
Warden; LYNN DINGLE, Minnesota
Department of Corrections Stillwater
Correctional Facility Warden;
NANNETTE LARSON, Minnesota
Department of Corrections Director of
Health Services; MARY MCCOMB,
Minnesota Department of Corrections
Stillwater Correctional Facility Former
Assistant to Warden and Associate
Warden; TIM LANZ, Minnesota
Department of Corrections Stillwater
Correctional Facility Unit Director;
MARK THIELAND, Minnesota
Department of Corrections Stillwater
Correctional Facility Assistant Warden;
DR. LEE, Minnesota Department of
Corrections Stillwater Correctional
Facility Primary Physician; MINCORR,
INC., Minnesota Correctional Industries,
a/k/a Minnesota Correctional Industries;
SHERYL VESNER, Minnesota

No. 12-8047
(D.C. No. 2:11-CV-00150-ABJ)
(D. Wyo.)

Department of Corrections Stillwater
Correctional Facility Physician; PETER
TROEDSON, Minnesota Department of
Corrections Stillwater Correctional
Facility Physician; DR. PAULSON,
Minnesota Department of Corrections
Stillwater Correctional Facility
Physician; DR. KNOPP, Minnesota
Department of Corrections Stillwater
Correctional Facility Physician;
CHRISTOPHER CEMAN, Minnesota
Department of Corrections Stillwater
Correctional Facility Physician;
RICHARD H. MILES, CEO,
Correctional Medical Services; JOHN
MILLER; ROBERT O. LAMPERT,
Director, Wyoming Department of
Corrections; STEVEN GAYLOR,
Wyoming Department of Corrections
Medium Correctional Institution Deputy
Warden/Contract Monitor; RON
RUTTGERS, Former Unit Manager,
Wyoming Department of Corrections;
MICHAEL MURPHY, Warden,
Wyoming Department of Corrections
Medium Correctional Institution; EDDIE
WILSON, Warden, Wyoming
Department of Corrections; PETER G.
ARNOLD, First Judicial District Court
Judge, each in his individual and official
capacity,

Defendants-Appellees.

**ORDER AND JUDGMENT[*]**

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding

(continued)

- 2 -

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Steve Weldon, a Wyoming state prisoner, appeals pro se from the district court's dismissal of his 42 U.S.C. § 1983 civil rights complaint. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Weldon filed his complaint on April 18, 2011, alleging a panoply of constitutional and federal statutory violations against numerous individuals, two corporate entities, and a Wyoming state-court judge. He sought compensatory and punitive damages, as well as declaratory and injunctive relief.

At the time he filed his complaint, Weldon was incarcerated in a Wyoming prison. He had previously been transferred by the Wyoming Department of Corrections to and from prisons in Minnesota and Virginia. Claims 1 through 10 of Weldon's complaint relate to events occurring while Weldon was incarcerated in a Minnesota prison. In Claim 1, he alleged that defendant Mary McComb, a Minnesota prison official, confiscated and later destroyed his legal files in retaliation for his filing of grievances. Claim 2 named McComb, Tim Lanz, and Ron Ruttgers. Lanz is

precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

a Minnesota prison official and Ruttgers is a Wyoming prison official. Weldon alleged they conspired to deprive him of his First Amendment right to access the courts by threatening to transfer him from the Minnesota prison back to a Wyoming prison if he did not cease his pursuit of civil actions and grievances against Minnesota prison officials. In Claims 3 through 10, Weldon alleged that McComb, Lanz, Ruttgers, and other defendants violated his constitutional rights in the Minnesota prison by deducting funds from his prison account; reducing the allotted storage space for prisoners, resulting in a loss of his legal materials; depriving him of other personal property; and depriving him of adequate medical care.

Claim 11 alleged that McComb, Lanz, and Minnesota prison officials Joan Fabian, Lynn Dingle, and Nannette Larson, conspired with Wyoming prison officials Eddie Wilson, Michael Murphy, and Robert Lampert, to transfer Weldon from the Minnesota prison to a Wyoming prison, and later to a prison in Virginia, in retaliation for his attempts to pursue his claims regarding unconstitutional treatment and conditions of confinement. In Claim 12 he alleged that four Wyoming prison officials—Lampert, Murphy, Wilson, and Steven Gaylor—deprived him of adequate medical care and a safe living environment in a Virginia Prison. Finally, in Claim 13, Weldon alleged that Peter G. Arnold, a Wyoming state-court judge, violated his federal constitutional rights by construing the Wyoming habeas statute in a manner denying habeas corpus relief to all Wyoming prisoners.

Many of the individuals named in the complaint, including McComb, Lanz, Fabian, Dingle, and Larson, are residents of Minnesota ("Minnesota Defendants"). Weldon moved the district court for service of the summons and complaint upon them by the United States Marshal. The court denied his motion, as well as his subsequent motion for reconsideration, holding it did not have personal jurisdiction over any of the Minnesota Defendants. Consequently, none of the Minnesota Defendants was served with Weldon's complaint.

The remainder of the defendants ("Wyoming Defendants") filed motions to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[1] The district court granted the motions in full. It also reiterated its previous holding regarding jurisdiction over the Minnesota Defendants and dismissed the claims against them without prejudice. Weldon filed a timely notice of appeal.[2]

---

[1] Two of the remaining defendants are not residents of Wyoming. Richard H. Miles and Correctional Medical Services ("CMS") appeared in the district court and filed a separate motion to dismiss, arguing they were not subject to personal jurisdiction in Wyoming and the complaint failed to state a claim against them. The district court granted their motion on both bases. Because Weldon fails to address the district court's dismissal with prejudice of all claims against Miles and CMS, we affirm the court's judgment as to these defendants.

[2] The district court did not enter judgment in a separate document as required by Fed. R. Civ. P. 58(a), and Weldon filed his notice of appeal before the entry of judgment pursuant to Rule 58(c)(2)(B). But Weldon's notice of appeal was nonetheless effective. *See Constien v. United States*, 628 F.3d 1207, 1211-12 (10th Cir. 2010); Fed. R. App. P. 4(a)(7)(B).

## II. Discussion

**A.    Dismissal of Claims Against Minnesota Defendants Based on Lack of Personal Jurisdiction**

Weldon contends the district court erred in holding it did not have personal jurisdiction over the Minnesota Defendants.  As the plaintiff, Weldon bore the burden to establish the court's jurisdiction over all defendants.  *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).  Our review is de novo.  *Id.*  "We accept as true any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor."  *Id.*

In determining whether a federal court has personal jurisdiction over a defendant, we consider "(1) whether the applicable [state long-arm] statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotation omitted).  "Pursuant to Wyoming's long-arm statute, Wyoming courts are authorized to exercise personal jurisdiction over a defendant on any basis which is not inconsistent with the Wyoming or United States Constitutions."  *Meyer v. Hatto*, 198 P.3d 552, 555 (Wyo. 2008); *see also* Wyo. Stat. Ann. § 5-1-107(a).  "Thus, if jurisdiction is consistent with the Due Process Clause, then [Wyoming's] long-arm statute authorizes jurisdiction over a nonresident defendant."  *Trujillo*, 465 F.3d at 1217.

The exercise of jurisdiction over a nonresident defendant must satisfy the minimum contacts standard to comport with due process.  *Id.*  "[A] court may

maintain general jurisdiction over a nonresident defendant, based on the defendant's continuous and systematic general business contacts with the forum state." *Id.* at 1218 n.7 (quotation omitted). Absent systematic and continuous activity in the forum state, "[t]he minimum contacts necessary for specific jurisdiction may be established where the defendant had purposely directed its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Id.* at 1218 (quotations omitted).

The district court concluded that, even assuming "some type of contractual relationship between the State of Wyoming and the State of Minnesota for the confinement of Wyoming prisoners," R. at 390, Weldon failed to allege any activities by the Minnesota Defendants in Wyoming or any consequences of their alleged actions in Wyoming. Lack of such minimum contacts leaves a Wyoming without jurisdiction over the Minnesota Defendants.

### 1. Activities Directed at a Resident of the Forum State

Weldon contends a Wyoming court could assert jurisdiction over the Minnesota Defendants because he is a resident of the forum state and they purposefully directed their activities at him. Although it is not clear whether Weldon was a resident of Wyoming while he was incarcerated in a Minnesota prison, we must accept his allegation as true for purposes of the jurisdictional analysis. *See Melea, Ltd.*, 511 F.3d at 1065. But even assuming that fact,

> [not] *any* contact with a resident of a forum is sufficient to establish
> minimum contacts with that forum. Instead, it is essential in each case
> that there be some act by which the defendant purposefully avails itself
> of the privilege of conducting activities *within the forum State*, thus
> invoking the benefits and protections of its laws.

*Trujillo*, 465 F.3d at 1219 (quotation omitted). Therefore, the Minnesota Defendants'

contacts with Weldon *in Minnesota* are insufficient to confer jurisdiction over them

by a Wyoming court. *See id.* at 1220 ("It is the defendant's contacts *with the forum*

*state* that are of interest in determining whether personal jurisdiction exists, not its

contacts with a resident of the forum." (quotation and brackets omitted)).

> **2.** **Minimum Contacts Based on Contract Between Wyoming and**
> **Minnesota**

Weldon argues a contract between the states of Wyoming and Minnesota

related to the confinement of Wyoming prisoners in Minnesota provides a basis for

general jurisdiction over the Minnesota Defendants—or at least establishes

purposeful availment of the Wyoming forum by these defendants. Like the district

court, we assume there is such a contractual relationship between Wyoming and

Minnesota.[3] But we have held this type of contract does *not* subject nonresident

defendants to jurisdiction.

---

[3]     Weldon attaches to his opening appeal brief a copy of the Contract Between
the State of Minnesota and the State of Wyoming for the Implementation of the
Interstate Corrections Compact. He explains that he mistakenly failed to file this
contract in the district court and that the court did not advise him of his error until it
denied his motion for reconsideration of service. But the district court did not
dismiss his complaint until more than six months later. Thus, Weldon had ample
opportunity to submit this contract for the district court's consideration. We will not

(continued)

- 8 -

In *Trujillo*, a New Mexico state prisoner who had previously been transferred to and from a prison in Virginia, sued Virginia prison officials in federal court in New Mexico. *Id.* at 1214-15. He alleged that court had personal jurisdiction over the Virginia defendants because they had received a transferred New Mexico prisoner and had implemented New Mexico's policies pursuant to a contract between the two states. *Id.* at 1219. We disagreed, concluding, "The fact that the Virginia officials' contact with Mr. Trujillo came about because of a contract between the State of New Mexico and the State of Virginia is not enough, on its own, to subject the Virginia defendants to suit in New Mexico." *Id.* at 1219 n.10. Likewise, the Minnesota Defendants here were not subject to jurisdiction in Wyoming based on the assumption of a contract between the states of Wyoming and Minnesota.

We reach the same conclusion with respect to Weldon's statutory argument. He cites provisions of the Western Interstate Corrections Compact ("WICC"), Wyo. Stat. Ann. § 7-3-401, as establishing minimum contacts by the Minnesota Defendants with the state of Wyoming. Specifically, under the WICC (1) the receiving state acts as an "agent" for the sending state, *id.*, Art. IV(a); (2) inmates remain subject to the jurisdiction of the sending state, *id.*, Art. IV(c); and (3) the governing law in hearings to which an inmate is entitled is that of the sending state, *id.*, Art. IV(f). In *Trujillo* we concluded, "The ICC does not, by its terms, give

review documents that were "not before the district court" when the ruling appealed from was made. *Boone v. Carlsbad Bancorp., Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992).

personal jurisdiction to the transferring state over the receiving state's correctional officers[, nor does it] evidence contacts by any of the Virginia defendants with the State of New Mexico." 465 F.3d at 1218. And, "[T]he fact that the Virginia defendants may have acted as agents of the State of New Mexico pursuant to the ICC is also not sufficient, on its own, to give the New Mexico district court power to exercise personal jurisdiction." *Id.* at 1219 n.10.[4]

### 3. Personal Jurisdiction Based on Allegations of Conspiracy

Weldon next argues the district court had jurisdiction over some of the Minnesota Defendants based on the acts of their co-conspirators in Wyoming. He cites *Melea, Ltd.*, in which we observed, "The existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." 511 F.3d at 1069. But we emphasized, "[F]or personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than bare allegations that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Id.* (quotation omitted); *see also Shrader v. Biddinger*, 633 F.3d 1235, 1242 (10th Cir. 2011) (limiting "facts that must be accepted for purposes of the jurisdictional analysis to those well-pled (that is, plausible, non-conclusory, and non-speculative)" (quotation omitted)). To state a valid conspiracy claim under § 1983, "a plaintiff must allege specific facts showing

---

[4] The relevant terms of the ICC adopted in New Mexico and construed in *Trujillo* are identical to the terms of the WICC enacted by Wyoming. *Compare* Wyo. Stat. Ann. § 7-3-401 *with* N.M. Stat. Ann. § 31-5-17.

an agreement and concerted action amongst the defendants. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

But allegations sufficient to support a prima facie showing of conspiracy do not *necessarily* establish jurisdiction over a nonresident co-conspirator. In *Melea, Ltd.* we cautioned, "[T]o hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability." 511 F.3d at 1070. Accordingly, there still must be minimum contacts as to each defendant, although they can be based on the co-conspirator's presence in the forum state, "if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum." *Id.* In *Melea, Ltd.*, we held the plaintiff failed to establish personal jurisdiction over a nonresident defendant based on a co-conspirator's presence in the forum state because (1) there was no evidence of a "meeting of the minds"; and (2) no injury related to the conspiracy occurred in the forum state and the nonresident defendant's only contact with the forum state with regard to any purported conspiracy was the receipt of communications from the forum state, which did not give rise to the lawsuit. *See id.*

Weldon asserts the district court had jurisdiction over Minnesota Defendants McComb, Lanz, Fabian, Dingle, and Larson based upon his conspiracy allegations involving Wyoming Defendants Ruttgers, Lampert, Wilson, and Murphy. In Claim 2, he alleges Ruttgers, McComb, and Lanz conspired to prevent him from pursuing

- 11 -

grievances and civil actions against Minnesota prison authorities by threatening to transfer him back to a Wyoming prison.  Weldon wanted to remain in the Minnesota prison to be near his family.  He alleges that, after learning of his plan to file a § 1983 action, McComb telephoned Ruttgers in Wyoming and arranged for Weldon to meet with Lanz (in Minnesota) and Ruttgers (by telephone from Wyoming).  Ruttgers told Weldon if he did not cease his efforts to bring claims, Ruttgers would transfer Weldon back to Wyoming, put him in administrative segregation, allow him no visitors, and guarantee he would never be paroled.  Ruttgers ended the telephone call after telling Weldon that McComb and Lanz would be checking on him and keeping Ruttgers advised.  Lanz then reiterated Ruttgers' threats and asked Weldon if he understood them.

Even if these allegations support a prima facie showing of a conspiracy, they are insufficient to establish minimum contacts by McComb and Lanz with the state of Wyoming.  Weldon failed to allege an injury related to the conspiracy that occurred *in Wyoming*.  The aim of the alleged conspiracy was to dissuade Weldon, by threats of a transfer, from filing any more grievances and claims against Minnesota prison officials.  The injury he suffered was a denial of his right to access the courts as long as he desired to remain in the Minnesota prison.  Thus, his injury allegedly occurred *in Minnesota*.  Moreover, the allegation that a co-conspirator placed a single phone call from Wyoming is insufficient to establish minimum contacts between McComb

and Lanz and the state of Wyoming when the call was placed to Minnesota to threaten Weldon with harm in Minnesota.

In Claim 11, Weldon alleged McComb, Lanz, Fabian, Dingle, and Larson conspired with Lampert, Wilson, and Murphy

> to retaliate against the Plaintiff through successive punitive transfers from the State of Minnesota to the State of Wyoming, and then from the State of Wyoming to the State of Virginia as a 'trouble maker,' 'problem case,' and the 'worst of the worst' Wyoming had. This agreement was entered into in an attempt to prevent Plaintiff from pursuing Civil Remedies for his unconstitutional treatment and conditions of confinement.

R. at 13. Weldon maintains he suffered the retaliatory effects of this conspiracy in Wyoming as a result of being transferred there from Minnesota, but his factual assertions are insufficient to support a prima facie showing of a conspiracy. Weldon's bare allegation of a "collusive agreement to retaliate," *id.*, is deficient in the absence of specific facts showing an agreement and concerted action amongst these defendants. *See Shrader*, 633 F.3d at 1242; *Montgomery v. City of Ardmore*, 365 F.3d 926, 939-40 (10th Cir. 2004) (holding plaintiff failed to state § 1983 conspiracy claim where he did not allege specific facts showing agreement, concerted action, or "manner in which the conspiracy operated"). The allegations in Claim 11 provide no basis for a Wyoming court to assert jurisdiction over McComb, Lanz, Fabian, Dingle, or Larson.[5]

---

[5]    In his final contention regarding personal jurisdiction over the Minnesota Defendants, Weldon maintains the district court should have transferred his claims to

(continued)

**B.      Dismissal of Claims for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

The district court dismissed all of the claims against the Wyoming Defendants

for failure to state a claim upon which relief could be granted.  "We review de novo

the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Gee v.*

*Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is plausible
> on its face.  A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.

*Id.* at 1184 (quotation omitted).  "It is particularly important in [§ 1983 actions] that

the complaint make clear exactly *who* is alleged to have done *what to whom*, to

provide each individual with fair notice as to the basis of the claims against him or

her, as distinguished from collective allegations against the state."  *Kan. Penn*

*Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quotation and

brackets omitted).

We construe the allegations of a pro se complaint liberally.  *See Whitney v.*

*New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).  But we "will not supply

additional factual allegations to round out [his] complaint or construct a legal theory

on [his] behalf."  *Id.* at 1173-74.  Nor do we consider factual allegations contained in

a federal district court in Minnesota, rather than dismissing them without prejudice.
We address this argument after considering the merits of his claims against the
Wyoming Defendants.

- 14 -

Weldon 's appeal briefs but absent from his complaint. *See Smith v. Plati*, 258 F.3d 1167, 1172 n.2 (10th Cir. 2001).

## 1.    Dismissal of Claims 1 through 10 as Time-Barred

The district court dismissed Claims 1 through 10 as barred by the applicable statute of limitations. "The forum state's statute of limitations for personal-injury actions sets the limitations period for § 1983 actions," and the applicable limitations period in Wyoming is four years. *Gee*, 627 F.3d at 1189-90 (citing Wyo. Stat. Ann. § 1-3-105(a)(iv)(C)). "Although state law determines the applicable statute of limitations, federal law governs the particular point in time at which a claim accrues." *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006). "Section 1983 claims accrue . . . when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quotations and alteration omitted). Thus, "[d]etermining when [a] claim accrued requires identifying the constitutional violation and locating it in time." *Id.* (quotation and brackets omitted).

Weldon filed his complaint in April 2011. According to his allegations, the relevant acts and events in Claims 1 and 2 occurred in September 2000. In each of Claims 3 through 10, he alleged, "This issue formed the basis for the unlawful destruction of Plaintiff's legal files and the subsequent illegal threats of retaliation made by Defendants Ruttgers, McComb, and Lanz as stated in Claims one and two." R. at 8, 9, 11, 12, 13. The acts and events described in Claims 1 through 10 therefore occurred in or before September 2000, outside of the four-year statute of limitations.

- 15 -

Weldon does not contend he did not know or have reason to know of the injuries described in Claims 1 through 10 when the alleged actions occurred. He argues the statute of limitations should be tolled on these claims because the threats by Ruttgers, McComb, and Lanz prevented him from filing the claims sooner. The applicability of equitable tolling in a § 1983 case is determined by state law. *See Gee*, 627 F.3d at 1190. Citing *Enron Oil & Gas Co. v. Freudenthal*, 861 P.2d 1090, 1094 (Wyo. 1993), and *Merchant v. Gray*, 173 P.3d 410, 412-413 (Wyo. 2007), the district court held that "Wyoming law does not provide for equitable tolling." R. at 562.

In *Enron*, the Wyoming Supreme Court said it had not yet considered whether equitable tolling was available. It held that the plaintiff would not prevail even if it were to apply the doctrine. In its words, "Equitable tolling applies only where a party has more than one legal remedy available to him[, and] [t]he doctrine acts to toll the statute of limitations for the one remedy while the party is pursuing the other." 861 P.2d at 1094. In *Merchant*, the Wyoming Supreme Court rejected equitable tolling as a basis to extend a statutory appeal deadline. 173 P.3d at 412-13. Because Weldon had not identified more than one legal remedy applicable to his allegations in Claims 1 through 10, the district court concluded equitable tolling, as narrowly construed in *Enron*, would not extend the limitations period for the claims.[6]

---

[6]  In *Gee*, we said we had "found nothing to indicate that Wyoming has rejected equitable tolling." 627 F.3d at 1190. But here the district court cited Wyoming case

(continued)

- 16 -

Weldon does not directly challenge the district court's conclusion regarding the availability of equitable tolling in Wyoming. Instead, he contends the threats by Ruttgers, McComb, and Lanz to transfer him back to Wyoming if he continued to pursue grievances and claims, rendered his administrative remedies unavailable under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. *See Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011) ("[W]hen a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available.'"). But the district court did not dismiss Claims 1 through 10 because Weldon failed to exhaust his administrative remedies as required by the PLRA. Weldon fails to show how the district court erred in concluding equitable tolling (if even available) would not extend the statute of limitations on Claims 1 through 10 and the claims are barred by the applicable statute of limitations.[7]

### 2. Dismissal of Claim 11

Weldon alleges in Claim 11 that Lampert, Wilson, and Murphy conspired with certain Minnesota Defendants to transfer Weldon from the Minnesota prison to prisons in Wyoming and Virginia in retaliation for his pursuit of civil remedies for

---

law discussing the doctrine, declining to apply it in one context, and acknowledging its potential application in very narrow circumstances in another.

[7] Although we liberally construe a pro se party's appellate briefs, we do not assume the role of advocate and construct a legal theory on his behalf. *Whitney*, 113 F.3d at 1173-74.

unconstitutional treatment and conditions of confinement. We have already decided the allegations in Claim 11 are insufficient to support a prima facie showing of a conspiracy. As to Weldon's claims against Lampert, Wilson, and Murphy, the district court held that Claim 11 fails to state a claim because: 1) a prisoner has no protected interest requiring incarceration in a particular institution; 2)Weldon failed to allege specific facts showing the alleged retaliation occurred based on his attempt to pursue his civil remedies; and 3) he failed to allege facts showing personal involvement by Lampert, Wilson, or Murphy.

The district court's first reason for dismissal of Claim 11 was erroneous. Prison officials do not have "unbridled discretion to transfer inmates in retaliation for exercising their constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 561 (10th Cir. 1990).

> While a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution.

*Id.* at 561-62 (quotation and alteration omitted). But the other two bases for dismissal were not improper.

"[I]t is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of unconstitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* at 562 n.1. Weldon's allegations in Claim 11 are

conclusory. He identifies no grievances or claims he filed or attempted to file that allegedly led to his transfer from Minnesota to Wyoming, and later to Virginia. His assertion of being transferred because he was a "trouble maker, problem case, and the worst of the worst," R. at 13 (quotations omitted), is insufficient to establish a causal connection between the transfers and his exercise of constitutional rights. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) ("[A] plaintiff must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." (quotation omitted)). Nor has Weldon "identif[ied] specific actions taken by particular defendants that could form the basis of a constitutional violation." *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quotation omitted). Instead, he groups numerous defendants into a single cause of action without isolating any of their allegedly unconstitutional acts. *See id.* His allegations do not "make clear exactly *who* is alleged to have done *what to whom*." *Kan. Penn Gaming, LLC*, 656 F.3d at 1215 (quotation omitted). Weldon therefore alleges no connection between Lampert, Wilson, or Murphy and any constitutional violation. *See Brown*, 662 F.3d at 1166. Claim 11 fails to adequately state a claim for relief.

### 3. Dismissal of Claim 12

In Claim 12, Weldon alleges Lampert, Gaylor, Murphy, and Wilson violated his Eighth Amendment right to be free from cruel and unusual punishment through their failure or refusal to ensure he had constitutionally adequate medical care and a safe and healthy living environment in a Virginia prison. "A prison official's

deliberate indifference to an inmate's serious medical needs violates the Eighth

Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The test

for deliberate indifference is both objective and subjective.

> The objective component is met if the deprivation is sufficiently serious.
> A medical need is sufficiently serious if it is one that has been
> diagnosed by a physician as mandating treatment or one that is so
> obvious that even a lay person would easily recognize the necessity for
> a doctor's attention. The subjective component is met if a prison
> official knows of and disregards an excessive risk to inmate health or
> safety.

*Id.* (citations and quotations omitted). The deliberate indifference standard also

applies to claims alleging unconstitutional conditions of confinement. *See Smith v.*

*United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (stating prisoner must "allege

that each defendant official acted with deliberate indifference—that he or she both

knew of and disregarded an excessive risk to inmate health or safety" in case alleging

injury due to asbestos exposure (footnote omitted)).

Some of the allegations in Claim 12 require little discussion. Once again,

Weldon alleges no specific acts by Murphy or Wilson that could form the basis of a

constitutional violation. The district court was therefore correct in concluding Claim

12 failed to state a claim against these defendants. Weldon also complains that

Virginia prison officials confiscated his prescribed knee braces and hernia belts. This

allegation is insufficient "to raise a right to relief beyond a speculative level" because

he fails to "plead facts from which a plausible inference can be drawn that the action

was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1187, 1188 (quotation omitted).

The remaining allegations against Lampert and Gaylor relate to Weldon's exposure to mold at the Virginia prison; the Virginia prison officials' failure to treat his hernia with surgery; and their refusal to provide him with a specific migraine medication. He claims Lampert and Gaylor are responsible under Wyoming law for the health and welfare of Wyoming prisoners incarcerated in other states' prison systems. In particular, he contends these defendants can be held liable if they "personally directed the [constitutional] violation or had knowledge of the violation and acquiesced in its continuance." *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996).[8]

Weldon claims he was exposed to mold at the Virginia prison, causing an allergic reaction that made him cough for seven hours. Although he received nebulizer treatments, he alleges the combination of prolonged coughing and the denial of his hernia belts resulted in a new hernia. Weldon claims this hernia was extremely painful, indicating he had to repeatedly "lay on the floor or ground and force his intestines back into his abdominal cavity to relieve the pain and restore blood flow." R. at 14.

---

[8] We queried in *Dodds v. Richardson*, 614 F.3d 1185, 1194-99 (10th Cir. 2010), whether this and other bases for supervisory liability under § 1983 survived the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). We need not resolve that question here because Weldon cannot meet even our pre-*Iqbal* standard.

Weldon alleges no facts showing Gaylor "both knew of and disregarded an excessive risk to [his] health or safety" related to his exposure to mold at the Virginia prison. *Smith*, 561 F.3d at 1104 (reversing dismissal of Eighth Amendment claim against some defendants because plaintiff's factual allegations were sufficient to show they were aware of presence of asbestos in prison). His allegation that Gaylor had a duty to inspect the prison facility, but failed to do so, is insufficient to establish deliberate indifference. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

Weldon also contends Gaylor and Lampert were deliberately indifferent to his serious medical needs. He alleges they were aware, through an emergency grievance he filed with Lampert and his interview with Gaylor, of the extent of pain caused by his hernia and his migraines, as well as the Virginia prison officials' refusal to surgically repair the hernia or give him the migraine medication he wanted. Weldon states that he "ultimately received a response from the grievance review board denying all responsibility for [his] health and welfare and stating that they cannot affect Virginia DOC Policy and that [he] would essentially have to suffer through as best as he could." R. at 14.

Weldon does not allege that Virginia prison authorities diagnosed him as having a hernia. Nor does he assert that they refused all treatment for a hernia or for his migraines. And he fails to indicate what treatment they did offer him. He alleges only their refusal to provide him the only course of treatment <u>he</u> believed to be effective in each case. These allegations are insufficient to show a constitutional violation. For example, in *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1137 (10th Cir. 2005), a doctor opined that either surgery or doing nothing were acceptable courses of treatment for a fractured femur, while acknowledging that surgery was preferable. We held the doctor's alleged conduct, even if it constituted malpractice, was insufficient to show acts or omissions sufficiently harmful to evidence deliberate indifference of serious medical needs. *See id.* at 1143. In *Gee* we rejected an Eighth Amendment claim based on a prisoner's desire for a particular headache medication when other medications were offered. *See* 627 F.3d at 1192. We agree with the district court: Weldon's allegations amount to a disagreement with the judgment of medical personnel concerning the most appropriate treatment. Without more, such a disagreement does not rise to the level of a constitutional violation. *See id.* Weldon's allegations are therefore insufficient to state a claim against Lampert or Gaylor based on their knowing acquiescence in the continuation of a constitutional violation.

Moreover, "[t]he denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal

participation under § 1983." *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (quotation omitted). In *Stewart*, a prisoner pointed to evidence of the prison warden's knowledge of the alleged constitutional violation, yet denied an appeal of his grievance. We concluded, "Whatever knowledge [the warden] may have had when he denied the appeal, his only involvement was to deny the grievance appeal, which is insufficient for § 1983 liability." *Id.* Thus, even if Weldon could allege facts showing deliberate indifference to his serious medical needs by the Virginia prison officials, an allegation that Lampert and Gaylor denied his grievance, without more, is insufficient to state a claim for relief against them under § 1983.

### 4. Dismissal of Claim 13

In Claim 13, Weldon alleges that Peter G. Arnold, a Wyoming state-court judge, violated his federal constitutional rights by construing the scope of the Wyoming habeas corpus statute, Wyo. Stat. Ann. §§ 1-27-101 to -130, in a manner denying habeas corpus relief to all Wyoming prisoners.[9] Weldon alleges Judge Arnold's construction of the Wyoming habeas statute has "deprived [him] of his

---

[9] According to the Wyoming Supreme Court a state habeas corpus action is "seriously limited in scope so that defendants may only raise a claim going to the subject matter or personal jurisdiction of the court." *Nixon v. Wyoming*, 51 P.3d 851, 854 (Wyo. 2002); *see also* Wyo. Stat. Ann. § 1-27-125 ("Habeas corpus is not permissible to question the correctness of the action of a . . . judge when acting within [the judge's] jurisdiction and in a lawful manner."). It is not clear from Weldon's complaint whether he contends Judge Arnold applied this construction or interpreted the statute even more narrowly.

guaranteed right to the Writ of Habeas Corpus in both the State and Federal Courts."
R. at 15.

To the extent Weldon alleges Claim 13 against Judge Arnold in his individual capacity, the district court dismissed it as barred by absolute judicial immunity. "[J]udges are generally immune from suits for money damages," with two exceptions: "(1) when the act is not taken in the judge's judicial capacity, and (2) when the act, though judicial in nature, is taken in the complete absence of all jurisdiction." *Stein v. Disciplinary Bd. of Supreme Ct. of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008) (quotations and brackets omitted). Construing Weldon's allegations as referring to Judge Arnold's denial of his request for a writ of habeas corpus, the court decided the complaint contained no indication of acts outside of judicial capacity or with a complete lack of jurisdiction.

The allegations of the complaint do not support Weldon's contention that Judge Arnold was acting in an administrative capacity in construing the Wyoming habeas statute. His conclusory assertions of non-judicial action are insufficient where he alleges no facts showing Judge Arnold acted other than in a judicial capacity. Weldon also claims Judge Arnold's "suspension of the writ of habeas corpus for prisoners[] is clearly extra-judicial conduct not covered by the Eleventh Amendment." Aplt. Opening Br. at 17. But the complaint again fails to allege facts showing Judge Arnold took action in the complete absence of all jurisdiction. *See Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005) ("A judge will not be

deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of jurisdiction." (quotation omitted)).

Weldon also contends the Wyoming legislature has waived judicial immunity. He cites Wyo. Stat. Ann. § 1-27-108, which provides: "Any judge . . . who wrongfully and willfully refuses the allowance of the writ when properly applied for, shall forfeit to the party aggrieved the sum of one thousand dollars." This provision subjects a Wyoming judge to a monetary penalty under state law. It does not abrogate judicial immunity in a suit for damages under § 1983. We agree with the district court that Claim 13 against Judge Arnold in his individual capacity is barred by judicial immunity.

"Judicial immunity applies only to personal capacity claims." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011). The district court dismissed Claim 13 against Judge Arnold in his official capacity as barred by Eleventh Amendment immunity, concluding Weldon failed to plead facts supporting an exception to sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908). Weldon argues the district court erred in dismissing his official-capacity claim against Judge Arnold because he seeks prospective declaratory relief.[10] "In *Ex parte*

---

[10] Despite his references to injunctive relief in his opening appeal brief, Weldon did not seek injunctive relief against Judge Arnold in Claim 13. Moreover, under § 1983, he could not obtain injunctive relief against a judicial officer "unless a

(continued)

*Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity for suits against state officials seeking to enjoin alleged ongoing violations of federal law." *Id*. at 1154 (citation omitted). "[I]n determining whether the doctrine of *Ex parte Young* applies, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 1155 (quotation and brackets omitted). Although Weldon contends his complaint satisfies this two-part inquiry, we conclude otherwise; it fails at the first step. Weldon alleges Judge Arnold has construed the Wyoming habeas statute to deny all relief to Wyoming prisoners. Weldon makes a conclusory statement that Judge Arnolds's construction of the state statute also deprives him of his federal constitutional "guarantee" to the writ of habeas corpus, R. at 15, but he alleges no facts showing a violation of federal law, ongoing or otherwise.[11] Weldon failed to allege facts sufficient to show an exception to Eleventh Amendment immunity under *Ex parte Young*. The district court did not err.

---

declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

[11] In order to state a claim against Judge Arnold for declaratory relief, Weldon also must overcome the hurdle of establishing an existing case or controversy. *See Schepp v. Fremont Cnty.*, 900 F.2d 1448, 1452-53 (10th Cir. 1990) (holding claim against judge for declaratory relief was moot given the remote possibility the plaintiff would again be subjected to probation revocation proceedings before the same judge).

**C.     Dismissal With Prejudice Without Discovery or Opportunity to Amend**

The district court granted the Wyoming Defendants' motion to stay discovery pending its determination of the motions to dismiss the complaint.  Weldon contends he needs discovery to allege sufficient facts to state a plausible claim for relief.  But he identifies no facts that are unavailable to him without discovery.  *See Smith v. Kitchen*, 156 F.3d 1025, 1029 (10th Cir. 1997).  He therefore fails to show the district court's stay of discovery was an abuse of discretion.  *See Gaines v. Ski Apache*, 8 F.3d 726, 730-31 (10th Cir. 1993) (holding denial of discovery was not abuse of discretion).

Weldon also claims he should have been given an opportunity to amend when his complaint against the Wyoming Defendants was dismissed with prejudice.  We have said: "dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Gee*, 627 F.3d at 1195 (quotation omitted).  Futility of amendment is a question of law we review de novo. *Cohen v. Longshore*, 621 F.3d 1311, 1314-15 (10th Cir. 2010).  The district court did not expressly determine that it would be futile to give Weldon an opportunity to amend his complaint, but it well could have done so.  Amendment of Claims 1 through 10 would be futile in light of our affirmance of their dismissal as time-barred.  But our grounds for affirming the dismissal of Claims 11, 12 and 13 do not necessarily preclude the possibility that Weldon could amend his complaint to

- 28 -

allege sufficient facts to state a plausible claim. We need not decide that question because Weldon failed to take advantage of available opportunities to amend.

First, the Wyoming Defendants' motion to dismiss gave him "notice and opportunity to amend his complaint," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), yet he did not file an amended complaint as permitted by Fed. R. Civ. P. 15(a)(1)(B). And after the district court dismissed his complaint, Weldon did not seek leave to amend it by filing a motion to alter or amend the judgment or for relief from judgment under Fed. R. Civ. P. 59(e) or 60(b). *See Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185 (10th Cir. 1999) ("If a party seeks to amend a pleading following the court's grant of a motion to dismiss, the party must first move to reopen the case under [Rules] 59(e) or 60(b) and then file a motion under [Rule 15] for leave to amend . . . ."). It was incumbent upon him to do so, and his failure indicates that he "elected to appeal the case as it stood." *Switzer v. Coan*, 261 F.3d 985, 989 (10th Cir. 2001) (rejecting contention pro se plaintiff should have been allowed to amend his complaint after dismissal) (quotation omitted); *see also Dahn v. United States*, 127 F.3d 1249, 1252 (10th Cir. 1997) (holding district court did not err in failing to grant pro se plaintiff a post-judgment opportunity to amend her complaint when she did not seek leave to amend). A motion seeking leave to amend a complaint must give "notice to opposing parties and to the court of both the desire to amend and the particular basis for the amendment." *Calderon*, 181 F.3d at 1186. Weldon did not satisfy these

- 29 -

requirements in the district court, and he does not even attempt to detail and explain the additional facts he would allege with respect to Claims 11, 12 or 13. The district court did not err in dismissing all of Weldon's claims against the Wyoming Defendants with prejudice and without an opportunity to amend.

**D.    Failure to Transfer Claims Against Minnesota Defendants to Minnesota District Court**

Weldon contends the district court should have transferred his claims against the Minnesota Defendants to a federal district court in Minnesota, rather than dismissing them without prejudice. "A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice." *Trujillo*, 465 F.3d at 1222. A district court has discretion in making the decision whether to transfer or dismiss without prejudice. *Id.* at 1222-23. In *Trujillo*, the district court noted the option to transfer rather than dismiss the claims against the Virginia defendants, but it did not evaluate that possibility. Because a court's failure to exercise its discretion is an abuse of discretion, we remanded the issue for the district court to determine in the first instance. *Id.* at 1223.

Here the district court did not mention or evaluate whether transfer of the claims against the Minnesota Defendants was appropriate. The factors a court should consider are whether "the new action would be time-barred"; whether "the claims are likely to have merit"; and whether the original action was filed after the plaintiff should have realized the chosen forum was improper. *Id.* at 1223 n.16. Although

- 30 -

transfer is ultimately committed to the district court's discretion, due to the lack of merit of Claims 1 through 11,[12] it would be an abuse of discretion for the district court to transfer them. *Cf. Conkle v. Potter*, 352 F.3d 1333, 1337 (10th Cir. 2003) (declining to affirm dismissal sanction on alternate ground where court could not conclude that failure to impose sanction would be abuse of discretion).

### III.    Conclusion

We affirm the district court's dismissal without prejudice of all claims against the Minnesota Defendants and its dismissal with prejudice of all claims against the Wyoming Defendants, Richard H. Miles, and Correctional Medical Services, Inc. The Motion to Affirm and to Dismiss Appellees Dr. Dean Lee, Dr. Peter Troedson, Dr. Christopher Ceman, Correctional Medical Services, Inc., and Richard H. Miles is denied as moot. Weldon's motion to pay the filing and docketing fees in partial payments is granted and he is reminded of his obligation to make partial payments until the fees have been paid in full.

Entered for the Court

Terrence L. O'Brien
Circuit Judge

---

[12]    Claims 1 through 10 are time-barred regardless of the parties named as defendants, and our grounds for concluding the allegations in Claim 11 fail to state a claim against the Wyoming Defendants apply equally to Weldon's allegations against the Minnesota Defendants in that claim. Claims 12 and 13 do not name any Minnesota Defendants.