FILED
United States Court of Appeals
Tenth Circuit

December 22, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENN CIRCUIT

---

NOSHIR GOWADIA,

Plaintiff-Appellant,

v.

CULLY STEARNS, (FDC-H);
BRADLEY GREILICK, (FDC-H); R.J.
BALLASH, (Western Reg. Off.);
JOSE A. SANTANA, (Des. and Sent.
Comp.); BLAKE R. DAVIS, (former
Warden ADX); DAVID BERKEBILE,
(Warden, ADX); PAUL M. LAIRD,
(North Cent Reg. Off.),

Defendants-Appellees.

No. 14-1100

(D. of Colo.)

(D.C. No. 1:13-CV-00077-KMT)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.[**]

Noshir Gowadia appeals the district court's dismissal of his claims against

various Bureau of Prisons officials concerning his confinement in federal prison

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

in Colorado. He claims Fifth Amendment due process and Eighth Amendment violations arising from his assignment to the Administrative Maximum Facility (ADX) in Florence, Colorado and from certain conditions of confinement that regulated his ability to communicate with third parties inside and outside of prison. Because Gowadia is proceeding *pro se*, we construe his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

We find that none of the claims have merit and that the district court properly dismissed the complaint. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Gowadia is a former defense contractor who worked on a number of classified defense projects in Hawaii. In 2010, he was convicted in federal court in that state on numerous counts relating to both conspiracy to export classified defense information and to divulging national security secrets. After sentencing, Gowadia was imprisoned at ADX.

His confinement was subject to certain Bureau of Prison (BOP) special conditions (Special Administrative Measures or SAMs) that limited his communication both inside and outside prison. For example, the special conditions prohibited Gowadia from meeting or participating in telephone conversations with anyone except immediate family members and persons involved in his legal representation. Even these communications are heavily

controlled: Visits with family members are limited, monitored, non-contact, and must be approved fourteen days in advance. Telephone conversations with family members are also monitored. With the exception of his immediate family members, persons involved in his legal representation, United States courts, United States Attorney's Offices, members of Congress, and other federal law enforcement entities, Gowadia also is prohibited from communicating by mail with anyone outside of the prison.

In 2013, Gowadia brought conspiracy, due process, and Eighth Amendment claims against seven BOP officials. He alleged that employees at the Federal Detention Center in Hawaii conspired to share his mail with prosecutors to prevent him from getting a fair trial. He also alleged that BOP employees, to protect the perceived legitimacy of Gowadia's conviction and to retaliate against him for various complaints, conspired to initiate his placement in ADX and impose unjustified SAMs on him in prison. The former and current ADX wardens are also accused of participating in the same conspiracy and of denying Gowadia due process in relation to the SAMs.

The district court dismissed Gowadia's complaint in its entirety, finding that the court lacked personal jurisdiction over five of the defendants, that the remaining defendants were entitled to both absolute and qualified immunity, and that the complaint failed to state any claims upon which relief could be granted.

# II.  Analysis

Gowadia challenges the district court's determinations that: (1) it lacked jurisdiction over BOP officials operating in venues outside Colorado; (2) the defendants, in their official capacities, held absolute immunity from his claims for monetary damages; (3) the complaint failed to state any claims upon which relief could be granted against the remaining defendants; and (4) the remaining defendants were entitled to qualified immunity.

We review a district court's grant of a motion to dismiss de novo, accepting all allegations in the complaint as true and construing them in the non-moving party's favor.  *Robbins v. Wilkie*, 300 F.3d 1208, 1209 (10th Cir. 2002).

## A.  *Personal Jurisdiction*

Gowadia appeals the district court's dismissal of all claims against various defendants for lack of personal jurisdiction.

Unless a federal statute establishes otherwise, a district court's jurisdiction is determined by the law of the state in which it sits.  Fed. R. Civ. P. 4(k)(1)(A). As the district court properly noted, Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124(1)(a)–(b) (2007), grants jurisdiction to the maximum extent permitted by the Fourteenth Amendment's Due Process Clause.  As a result, a district court has jurisdiction over a defendant so long as he has sufficient minimum contacts with the state "such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Depending on their nature, a defendant's contacts with a forum may justify a finding of either general or specific jurisdiction. General jurisdiction requires that a defendant's contacts with the forum be so "continuous and systematic" as to justify the state in exercising jurisdiction over him even when the suit is unrelated to his contacts with the state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984)). The district court properly found the complaint does not allege that any of the non-Colorado defendants maintained such contacts.

Nor does his complaint fare better as it relates to specific jurisdiction. To support specific jurisdiction, the litigation must result from "alleged injuries that 'arise out of or relate to'" the defendant's contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales*, 466 U.S. at 414). Incidental contacts, however, are insufficient. The defendant still must have a "substantial connection" with the forum resulting from his purposefully directing his actions toward it. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). In sum, a defendant must have such contacts with the forum that he can reasonably anticipate being hauled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Gowadia alleges that BOP employees in Hawaii conspired to deny him a fair trial and retaliatorily initiated his transfer to ADX. Even if true, however, the misconduct took place in Hawaii, with no connection whatsoever to Colorado. To the extent that the initiation of Gowadia's transfer constitutes a contact with the forum, it would run afoul of due process to conclude that whenever a prison official is involved in the transfer of an inmate, that official has subjected himself to the transferee state's jurisdiction and can be hauled—possibly across the country—into its courts. *See Sanders v. United States*, 760 F.2d 869, 871–72 (8th Cir. 1985).

Gowadia also asserts that defendants located outside of Colorado wrongly approved or failed to stop his transfer and denied his challenge to his SAMs because of their membership in the aforementioned conspiracy. Gowadia does not assert that any of these challenged decisions were made within Colorado; he simply alleges that the end result of this chain of decisions was that he was imprisoned and subject to unjust conditions of confinement in Colorado. This fact, however, is not enough to establish personal jurisdiction over the defendants. We have "repeatedly held that the mere fact that individuals . . . residing in other states, review and deny inmate grievances for prisoners housed in Colorado is insufficient to render them subject to personal jurisdiction in Colorado." *Gambina v. Fed. Bureau of Prisons*, No. 10-CV-02376-MSK-KLM, 2011 WL 4502085, at *3 (D. Colo. Sept. 29, 2011) (citing *Durham v. Hood*, 412 F. App'x

127, 130 (10th Cir. 2011)).  As this court stated in *Hill v. Pugh*, "[i]t is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."  75 F. App'x 715, 719 (10th Cir. 2003).  Moreover, the alleged conspiratorial contacts between the non-Colorado and Colorado defendants cannot be considered here.  "[F]or personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007); *see also Shrader v. Biddinger*, 633 F.3d 1235, 1242 (10th Cir. 2011) (declining to consider conspiracy-based contacts where the allegations of conspiracy were conclusory).  As we discuss below, Gowadia's pleadings concerning the alleged conspiracy fail to meet this standard.

The district court thus correctly found that it lacked jurisdiction over the individual defendants.

### B.  Official Capacity Claims

Next, Gowadia argues that the district court erred in dismissing his claims for damages against the Colorado-based defendants in their official capacities.

The district court did not err.  Although government actors may be held liable for select constitutional violations in their *individual* capacities, *see, e.g.*, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971), government actors in their *official* capacities are absolutely immune

from suit for money damages, *see Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir.

2002) ("A *Bivens* action may not be brought against federal agencies or agents

acting in their official capacities.").  In essence, a claim against a public official

in his official capacity "operates as a claim against the United States" or against

the official's employer, *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001),

and these entities are immune from *Bivens* claims*, see Corr. Servs. Corp. v.

Malesko*, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a *Bivens* claim

against the officer's employer, the United States, or the BOP."); *FDIC v. Meyer*,

510 U.S. 471, 486 (1994) (holding federal agencies immune from *Bivens* claims

for money damages).

Accordingly, the district court was correct to dismiss any claims Gowadia

may have made for monetary damages against the Colorado-based prison officials

in their official capacities.

### C.  Failure to State a Claim

Gowadia also challenges the district court's determination that he failed to

state any claims upon which relief could be granted against the ADX wardens.

To survive a motion to dismiss for failure to state a claim, "a complaint must

allege sufficient factual matter, accepted as true, to 'state a claim that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Bare assertions and mere

conclusory allegations, however, are not accepted as true for the purposes of this analysis. *Id.* The claims will only survive a motion to dismiss if the remaining allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### 1. Conspiracy Claims

To be entitled to relief on a claim of civil conspiracy, "[a] plaintiff must allege, 'either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants.'" *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) (quoting *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990)). "Parallel action . . . or inaction . . . does not necessarily indicate an agreement to act in concert." *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004). This is largely because parallel action, oftentimes, is an expected result of innocent behavior and is thus just as consistent with independent actions as it is with conspiracy. *See, e.g.*, *Twombly*, 550 U.S. at 554 (noting that the parallel business behavior at issue was "just as much in line with . . . rational and competitive business strategy" as it was with conspiracy).

As to the ADX wardens, Gowadia makes three allegations. First, the complaint states that both conspired with the U.S. attorney in Hawaii to "cover up . . . crimes." R., Doc. 16 at 10–11. Second, Gowadia asserts that the wardens imposed SAMs "asked for by US attorney without hearing or evidence." *Id.*

Finally, he contends they relied on "false allegations" to justify overly harsh restrictions on his communications with others. *Id.*

The district court did not err in dismissing this claim. As noted above, conclusory allegations are not considered when determining whether or not a claim is plausible. *See Iqbal*, 556 U.S. at 678. The bare assertion that certain officials "conspired" is exactly the kind of conclusory statement we are not to consider when assessing a motion to dismiss. *Twombly*, 550 U.S. at 551, 556–57 (refusing to consider the bare assertion that defendants "entered into a contract, combination or conspiracy"). The second allegation—that the officials imposed SAMs without hearing or evidence—does nothing to raise an inference of conspiracy. We cannot find, nor has Gowadia pointed to, any statute or regulation requiring a hearing before imposition of SAMs. In fact, the regulation that governs SAMs states that they may be imposed simply "[u]pon direction of the Attorney General" or his designee. 28 C.F.R. § 501.3(a).

As for the allegation that the SAMs were imposed without evidence, the complaint endorses the opposite by later challenging the reasons given for their imposition. Again, we have not found, nor has Gowadia pointed to, any statute or regulation that requires that an inmate subject to SAMs be given anything other than a "written notification of the . . . basis for these restrictions." 28 C.F.R. § 501.3(b). Given this, the complaint does not demonstrate that the defendants

circumvented any established processes at all, much less that they did so in a way indicative of conspiracy.

The final allegation thus stands alone, and is insufficient to raise a reasonable inference that any meeting of the minds took place or that the officials entered into an agreement to violate Gowadia's rights. Although the complaint states that the prison officials made "false allegations" to justify the SAMs, it largely avoids specifying what these false allegations were. R., Doc. 16 at 10–11. We are unable to reasonably infer the existence of a wide-ranging, multi-state conspiracy against Gowadia based on unspecified false allegations.[1]

Finally, to the extent that restrictions on Gowadia's communications are consistent with a conspiracy to prevent him from going to the media, they are also consistent with a desire to prevent an offender with decades of experience working on advanced weapons systems and convicted of disclosing national defense information from doing so again in the future. Because of the existence of this equally—if not more— likely explanation for the imposition of the SAMs, their alleged restrictiveness is of no help to Gowadia in raising an inference of

---

[1] The only allegation specified in the complaint was that one of the wardens, in justifying the second set of SAMs, relied on Gowadia's "access to classified information" when, in fact, he had none. R., Doc. 16 at 10–11. As noted above, nothing else in the complaint raises an inference that the warden entered into an agreement to violate Gowadia's civil rights. Even taking the claims in the complaint as true, this one false allegation, standing alone, is insufficient to raise such an inference.

-11-

conspiracy. The specific facts pleaded in the complaint fail to establish the plausible existence of a conspiracy involving the ADX wardens.

The district court thus did not err in dismissing the conspiracy claims.

### 2. *Fifth Amendment Due Process Claims*

To qualify for protection under the Due Process Clause in the first place, a plaintiff must allege a deprivation of either life, liberty, or property. Gowadia alleges that his transfer to ADX and the imposition of the SAMs violated a liberty interest.

As the district court properly recognized, however, prisoners retain "only a narrow range of protected liberty interests" under the Fifth Amendment. *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012). Not every state action taken for a punitive reason encroaches on a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Even prison regulations that guarantee certain treatment, conditions, or processes do not necessarily create constitutionally protected liberty interests. *See id.* at 483–84. Rather, whether or not certain treatment violates a prisoner's liberty interests generally turns on whether it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Given this, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Rezaq*, 677 F.3d at 1011. "This is so because incarcerated persons retain only a 'narrow range of protected liberty

interests.'" *Rezaq*, 677 F.3d at 1011 (quoting *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994)).

In *Rezaq*, this court considered four nondispositive factors appropriate for determining what qualifies as atypical and significant hardship. These factors include whether: (1) the treatment relates to and furthers legitimate penological interests; (2) the conditions complained of are extreme; (3) the treatment increases the duration of confinement; and (4) the treatment is of indeterminate length. *Id.* at 1012 (citing *Estate of DiMarco v. Wyoming Dep't of Corr.*, 473 F.3d 1334, 1332 (10th Cir. 2007)). Although these factors are useful, the key to the determination is "a fact-driven assessment that accounts for the totality of the conditions presented by a given inmate's sentence and confinement." *DiMarco*, 473 F.3d at 1332.

To satisfy the first factor, there need only be a "reasonable relationship" between the treatment and the asserted penological interests. *Id.* at 1014. Here, Gowadia was convicted of exporting classified defense information and of communicating national defense information to aid a foreign nation. The district court found that "in designating Plaintiff to ADX and in continuing the SAM . . . the BOP properly considered Plaintiff's underlying criminal conduct, which consists of disclosing classified information about the B–2 bomber to unauthorized individuals." *Gowadia v. Stearns*, 13-cv-00077-KMT, 2014 WL 959487, at *9 (D. Colo. Mar. 12, 2014). We see no reason to disturb the district

-13-

court's finding on this point. There is an obvious and reasonable relationship between Gowadia's crimes and the measures the BOP implemented to restrict his communications. For these reasons we agree with the district court that Gowadia's placement at ADX and his SAMs relate to and further legitimate penological interests. This factor thus weighs against finding a liberty interest.

As to the second factor, this court has already established that the conditions at ADX are not atypically "extreme." *See Rezaq*, 677 F.3d at 1014–15; *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639 (2006) (finding that the conditions at ADX do not impose an atypical and significant hardship). Although both of these cases dealt with general population prisoners and Gowadia is incarcerated in a specialty unit, he fails to assert that his confinement differs from that of the plaintiffs in *Rezaq*. Although the SAMs restricting Gowadia's communications are in the record, they do not, standing alone, amount to extreme conditions. Without more specific facts concerning the conditions of his confinement, we cannot conclude that this factor weighs in favor of finding a liberty interest.

Gowadia has not claimed that the BOP's actions have increased the duration of his confinement. Thus, the third factor weighs against finding a liberty interest.

The final factor also does not weigh in Gowadia's favor. In *Rezaq* we explained that prisoners confined at ADX are provided with periodical reviews of

-14-

their placement in which they have a number of procedural protections, including the opportunity to participate and a right to appeal. Nowhere does Gowadia allege that his placement or conditions are indeterminate, nor does he allege that he has not received the same periodic reviews and procedural protections that we found sufficient in *Rezaq*. In fact, the SAMs expire after one year if not modified before then.

In sum, none of the four *Rezaq* factors weigh in favor of finding that Gowadia had a constitutionally protected liberty interest in avoiding either the SAMs or confinement at ADX. Given this, the district court correctly held that Gowadia failed to state any due process claims upon which relief could be granted.

### 3. Eighth Amendment Claims

Although the district court did not address them, Gowadia asserts that the complaint contained several Eighth Amendment cruel and unusual punishment claims.

To the extent that the complaint intended to invoke the Eighth Amendment, it fails to state any claims upon which relief may be granted. To present a valid Eighth Amendment claim based on prison conditions, a plaintiff must allege an "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Qualifying needs include things such as "food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also*

*Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (listing "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities" as qualifying needs). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305. Applying these precedents, we have held that, without proof of a specific deprivation, imprisonment at the ADX facility does not violate the Eighth Amendment's prohibition of cruel and unusual punishment. *See, e.g.*, *Ajaj v. United States*, 293 F. App'x 575, 582–84 (10th Cir. 2008) (holding ADX conditions, including twenty-three hours of isolation per day, did not violate Eighth Amendment); *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003) (similar).

Here, the complaint failed to allege a deprivation of any particular need. The complaint thus failed to state an Eighth Amendment claim upon which relief could be granted.

### D. *Qualified Immunity*

Finally, Gowadia appeals the district court's determination that the ADX wardens are entitled to qualified immunity in their individual capacities. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" unless the "conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As discussed above, however, the complaint fails to state a single valid claim against either

-16-

warden and thus fails to establish that either violated any of Gowadia's rights. As a result, the district court was correct in determining that the ADX wardens are entitled to qualified immunity.

## III. Conclusion

For the reasons stated above, we find no error in the district court's order dismissing the case. The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge